IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-20010
_____


THE JOHN CORPORATION; US VANGUARD LTD INC,

Plaintiffs - Appellants

v.

THE CITY OF HOUSTON; CHERRY MOVING COMPANY INC,
doing business as Cherry Demolition

Defendants - Appellees

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

June 12, 2000

Before KING, Chief Judge, and DUHÉ and DeMOSS, Circuit Judges.

KING, Chief Judge:

Plaintiffs-Appellants The John Corporation and U.S. Vanguard, Limited, Inc. appeal from the district court's judgment dismissing without prejudice their claims against the City of Houston and Cherry Moving Company, Inc., arguing that the lower court erred in finding that each of their federal claims is either unripe or frivolous. Although we agree that an Eighth Amendment claim is frivolous and that the takings claim is unripe, we conclude that other claims are ripe, and therefore reverse in part and remand for further proceedings.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In 1995, Van Ngoc Pham, president of The John Corporation, executed an earnest money contract with Winkler Investment Group to purchase an apartment complex for $1.9 million.  The complex included fifty-three apartment buildings, six utility buildings, and a mailroom.  Four years prior to Pham's purchase, the City of Houston ("the City") had issued demolition orders covering the apartment buildings.

Pham discussed a rehabilitation plan with the City.  He executed a Bond Agreement with the City that set forth the conditions under which he would be allowed to rehabilitate the buildings, and posted a $70,000 bond to secure building permits.  According to the complaint, renovation efforts were immediately undertaken, but were thwarted by a number of actions on the City's part.  Those actions included ordering the eviction of all tenants, and thereby restricting an income stream; refusing, after issuing a number of occupancy permits for renovated buildings, to issue further permits; and placing a hold on temporary electrical permits, thereby thwarting efforts to repair three buildings damaged by fire in June 1996.  The City is also described as issuing a number of citations against The John Corporation for violations of ordinances after a broken water line was discovered and reported, and not removing those citations after it was determined that water line was on City property and the City was obligated to repair it.  The City did

not extend the time available for obtaining permits to compensate for the City's refusal to issue permits while the water line remained unrepaired. In addition, the City is said to have filed liens and otherwise billed The John Corporation for work allegedly done by contractors and city officials. Finally, during the summer of 1997, Cherry Moving Company ("Cherry Moving") demolished forty-one apartment buildings and portions of the fence surrounding the property.

The John Corporation, U.S. Vanguard Limited, Inc., and Pham filed suit in state court against the Winkler Investment Group, the City, and Cherry Moving, asserting violations of due process and equal protection rights under the Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution and violations of Texas state law and the Texas Constitution. The claims against the Winkler Investment Group were severed and tried. The plaintiffs subsequently moved to non-suit the City and Cherry Moving. Shortly thereafter, on May 29, 1998, The John Corporation and U.S. Vanguard ("Appellants") filed this action in the United States District Court for the Southern District of Texas under 42 U.S.C. § 1983. Their complaint, in addition to stating state-law claims of breach of contract, fraud, and misrepresentation, asserts that the City and Cherry Moving violated their rights under the Fifth, Eighth, and Fourteenth Amendments of the U.S. Constitution, and seeks actual and punitive damages, interest, and attorney fees. The complaint

filed in federal court asserts claims generally similar to those filed in state court, but adds allegations that the City demolished the property "without a public purpose and without just compensation in violation of the Fifth Amendment" and that the demolition was undertaken in violation of an injunction. On September 4, the City filed a motion to remand, and Cherry Moving filed a motion to dismiss for lack of subject-matter jurisdiction. Construing the City's motion as a motion to dismiss for lack of subject-matter jurisdiction, the court granted both motions and dismissed the claims without prejudice to refiling in the appropriate state court. The two corporations timely appeal.

## II. STANDARD OF REVIEW

We review a district court's grant of a motion to dismiss for lack of subject-matter jurisdiction de novo, using the same standards as those employed by the lower court. See Rodriguez v. Texas Comm'n on the Arts, 199 F.3d 279, 280 (5th Cir. 2000); EP Operating Ltd. Partnership v. Placid Oil Co., 26 F.3d 563, 566 (5th Cir. 1994). We must take as true all of the complaint's uncontroverted factual allegations, see Saraw Partnership v. United States, 67 F.3d 567, 569 (5th Cir. 1995), and will affirm the dismissal if "'the court lacks the statutory or constitutional power to adjudicate the case.'" Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss., 143 F.3d 1006,

4

1010 (5th Cir. 1998) (quoting Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1187 (2d Cir. 1996)).

Appellants assert jurisdiction under 28 U.S.C. § 1331.  As the Supreme Court recently has reaffirmed, in federal question cases,

> the District Court has jurisdiction if "the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another" unless the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous."

Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (quoting Bell v. Hood, 327 U.S. 678, 682-83, 685 (1946)).  Appellants have the burden of demonstrating that the federal court has subject-matter jurisdiction.  See Stockman v. Federal Election Comm'n, 138 F.3d 144, 151 (5th Cir. 1998).

### III.  THE COMPLAINT

In their complaint, Appellants allege that the City, in undertaking a course of conduct that thwarted their attempts to renovate their property and that culminated in the destruction of forty-one buildings, violated rights guaranteed by the Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution.  The district court dismissed the Eighth Amendment claim, finding it frivolous.  It interpreted the gravamen of Appellants' complaint as asserting a takings claim, and because Appellants had not used

5

state-provided procedures to attempt to obtain just compensation as required under <u>Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City</u>, 473 U.S. 172 (1985), the court declared that claim to be unripe.  Relying principally on <u>Graham v. Connor</u>, 490 U.S. 386 (1989), the district court also dismissed the Appellants' due process[1] and their equal protection claims, finding that those claims were subsumed into the more particularized takings claim.  Thus, at issue is whether the district court properly dismissed each of the Appellants' claims.

In order to resolve this issue, we must be clear on what the complaint alleges, for the "first step in any [§ 1983] claim is to identify the specific constitutional right allegedly infringed."  <u>Albright v. Oliver</u>, 510 U.S. 266, 271 (1994) (citing <u>Graham</u>, 490 U.S. at 394); <u>see also</u> <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 841 n.5 (1998); <u>Baker v. McCollan</u>, 443 U.S. 137, 140 (1979) (noting the need "to isolate the precise constitutional violation with which [the defendant] is charged" in § 1983 cases).  Individuals may look to several constitutional provisions for protection against state action that results in a deprivation of their property.  The Fourteenth Amendment guarantees that individuals are not to be deprived of their property without due process of law, a protection that has been

---

[1]  It is unclear whether the court viewed the due process claims as claims that Appellants' procedural due process rights or substantive due process rights were violated, or viewed the complaint as raising both types of claims.

6

viewed as guaranteeing procedural due process and substantive due process.  Procedural due process promotes fairness in government decisions "[b]y requiring the government to follow appropriate procedures when its agents decide to 'deprive any person of life, liberty, or property.'"  Daniels v. Williams, 474 U.S. 327, 331 (1986).  Substantive due process, "by barring certain government actions regardless of the fairness of the procedures used to implement them, [] serves to prevent governmental power from being 'used for purposes of oppression.'"  Id. (quoting Murray's Lessee v. Hoboken Land & Improvement Co., 59 U.S. (18 How.) 272 (1856)).  The Equal Protection Clause protects individuals from governmental action that works to treat similarly situated individuals differently.[2]  See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985); Rolf v. City of San Antonio, 77 F.3d 823, 828 (5th Cir. 1996); Samaad v. City of Dallas, 940 F.2d 925, 941 (5th Cir. 1991).

Other protections exist through incorporation.[3]  For example, because principles embodied in the Takings Clause of the

---

[2]  Unlike the Due Process Clause, the Equal Protection Clause does not require that the governmental action work a deprivation of a constitutionally protected property or liberty interest.  See Brennan v. Stewart, 834 F.2d 1248, 1257 (5th Cir. 1988).

[3]  As we explained in Brennan, "[o]ne form of 'substantive due process' is the substantive protections in the Bill of Rights that have been 'incorporated' into the Fourteenth Amendment to limit the power of the States."  834 F.2d at 1255.  Thus, rights protected via incorporation are technically part of the Fourteenth Amendment's substantive due process protection.

7

Fifth Amendment have been incorporated into the Fourteenth Amendment, see Samaad, 940 F.2d at 933, individuals are also granted the right to receive "just compensation" if the state takes their property for public use.  Finally, the Fourth Amendment protects individuals against unreasonable seizures of property.  See United States v. James Daniel Good Real Property, 510 U.S. 43 (1993); Soldal v. Cook County, Ill., 506 U.S. 56, 61-63 (1992); Samuels v. Meriwether, 94 F.3d 1163 (8th Cir. 1996); Hroch v. City of Omaha, 4 F.3d 693 (8th Cir. 1993); Conner v. City of Santa Ana, 897 F.2d 1487 (9th Cir.), cert. denied, 498 U.S. 816 (1990).

Appellants assert that (1) after requiring that Pham put up a $70,000 bond and become a party to a Bond Agreement as a condition for obtaining permits needed for renovation, the City undertook a sequence of actions that impeded or halted progress on Appellants' renovation efforts; (2) a 1991 demolition order issued to the Winkler Investment Group was based on an unconstitutionally vague and overbroad statute; (3) the City is estopped from relying on the 1991 order to justify its demolition of buildings in 1997; (4) the City's "Dangerous Building Ordinance" is unconstitutional, and the City continued to demolish buildings after August 5, 1997, in violation of an injunction against enforcement of relevant sections of an

ordinance found unconstitutionally vague on its face;[4] (5) the City demolished buildings that were at least partially renovated or previously had been issued occupancy permits; and (6) the Appellants were not provided due process before the destruction and were not personally issued a demolition order. These allegations form the basis of Appellants' claims that the City destroyed their property "without public purpose and without compensation in violation of the Fifth Amendment," that they were denied their "rights to due process of law and equal protection of law . . . as guaranteed under the Fifth, Eighth and Fourteenth Amendments," that the City's actions "constituted a denial of fundamental fairness in government decision making in violation of the Fourteenth Amendment," and that the City "engaged in discriminatory practices against Plaintiffs in the methods by which it [chose] to enforce [the CURB] Ordinance."

---

[4] In a single paragraph, Appellants refer both to a "Dangerous Building Ordinance" and to the Comprehensive Urban Rehabilitation and Building Minimum Standards ("CURB") Ordinance. We assume that these labels refer to a single ordinance. Appellants do not specify which sections of the CURB Ordinance were found unconstitutional, which clause of the U.S. Constitution the Ordinance allegedly violates, or which sections of the Ordinance were deemed to be applicable to Appellants' property. The CURB Ordinance was enacted in 1993, so that ordinance could not have been the basis for the 1991 demolition order. The injunction referenced in the complaint was issued by a judge hearing claims that included allegations that CURB Ordinance was unconstitutionally vague and overbroad, both facially and as applied. See City of Houston v. Yetiv, No. 9459707 (Tex. App. Oct. 20, 1997) (unpublished).

Appellants argue strenuously that their claims do not include a takings claim because they nowhere allege that the City used its power of eminent domain to take property for public use.[5]  Instead, Appellants assert that the City relied on its police powers to destroy their property.  Such a distinction between the use of police powers and of eminent domain power, however, cannot carry the day.  The Supreme Court's entire "regulatory takings" law is premised on the notion that a city's exercise of its police powers can go too far, and if it does, there has been a taking.  See Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 415 (1922) ("The general rule at least is, that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking."); see also Lucas v. South Carolina Coastal Council, 505 U.S. 1003 (1992) (examining under the Takings Clause a challenge to state law that rendered plaintiff's property valueless).[6]  Moreover, as the Supreme Court

---

[5]  Appellants also argue that they do not assert a takings claim because "the City did not 'take' the Winkler Apartments and put them to public use.  It simply tore them down . . . ." To the extent that this argument rests on a notion that a governmental entity must appropriate property and put it to use for the general public in order for the government's action to be a taking under the Fifth Amendment, it must be rejected.  See, e.g., Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1014 (1984) ("This Court . . . has rejected the notion that a use is a public use only if the property is put to use for the general public."); see also Hawaii Housing Auth. v. Midkiff, 467 U.S. 229, 243-44 (1984); Rindge Co. v. Los Angeles, 262 U.S. 700, 707 (1923).

[6]  Within the "due process" theory described in Williamson County, exercises of police power that go "too far" are violations of the Due Process Clause, not the Takings Clause.

10

has noted, "[w]hile the typical taking occurs when the government acts to condemn property in the exercise of its power of eminent domain, the entire doctrine of inverse condemnation is predicated on the proposition that a taking may occur without such formal proceedings." First English Evangelical Lutheran Church v. County of Los Angeles, 482 U.S. 304, 316 (1987). Thus, simply because the City did not formally use its powers of eminent domain to destroy Appellants' property does not mean that its actions could not amount to a taking requiring just compensation.

We consider it telling that the complaint alleges in a paragraph that does not mention the Fourteenth Amendment or due process that the destruction of the buildings was in violation of the Fifth Amendment as it was not for a public purpose and was done without just compensation.[7] Thus, whether Appellants now wish to relabel their allegation as a substantive due process

---

The Williamson County court declined to consider the merits of that theory. See Williamson County, 473 U.S. at 199 ("We need not pass upon the merits of petitioners' arguments . . . ."). However, the decision in Lucas would appear to make questionable the theory's viability. See Villas of Lake Jackson, Ltd. v. Leon County, 121 F.3d 610, 613-14 (11th Cir. 1997) ("Lucas and First English confirm that 'goes too far' means so far that the regulation constitutes a Takings Clause taking under one of the various standards set forth in recent Supreme Court decisions, not a substantive due process violation.").

[7] The same actions are alleged to be in violation of Article 1, Section 17 of the Texas Constitution. That section provides that "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person . . . ." TEX. CONST. of 1876, art. I, § 17 (West 1997).

11

allegation is immaterial[8] — their complaint asserts a violation

of a right arguably protected by the Fifth Amendment's Takings

Clause.[9]  We therefore conclude that the complaint includes a

takings claim.  We also identify claims that the City violated

---

[8]  Appellants' complaint labels their basic claim as a "wrongful taking" claim.

[9]  Appellants assert that the government's action was "without public purpose."  As we have noted previously, the question of whether governmental action undertaken without authority, e.g., a taking of private property for private use, is properly considered a violation of the Takings Clause or the Due Process Clause (or both) has not been definitively answered.  See Samaad, 940 F.2d at 936 n.26.  Five Justices recently suggested that the Takings Clause presupposes legitimate government action, see Eastern Enters. v. Apfel, 524 U.S. 498, 545 (1998) (Kennedy, J., concurring in judgment and dissenting in part) ("The [Takings] Clause presupposes what the government intends to do is otherwise constitutional . . . ."); id. at 554 (Breyer, J., dissenting) ("As [the Takings Clause] language suggests, at the heart of the Clause lies a concern, not with preventing arbitrary or unfair government action, but with providing compensation for legitimate government action that takes 'private property' to serve the 'public' good.").  Other references to the Takings Clause presupposing otherwise legitimate government action also appear.  See, e.g., First English, 482 U.S. at 315 ("This basic understanding of the Amendment makes clear that it is designed not to limit the governmental interference with property rights per se, but rather to secure compensation in the event of otherwise proper interference amounting to a taking.").  However, language inserting principles of due process into takings jurisprudence is also quite common.  See, e.g., Apfel, 524 U.S. at 537 (plurality opinion) (O'Connor, J.) (concluding that "the governmental action [at issue in the case] implicates fundamental principles of fairness underlying the Takings Clause."); Agins v. City of Tiburon, 447 U.S. 255, 260 (1980) (holding that a zoning ordinance constitutes a taking if it does not "substantially advance a legitimate government interest").  We do not regard the initial consideration of subject-matter jurisdiction as the appropriate stage at which to decide the knotty issue of the proper "home" for Appellants' claim and are instead guided by the language they chose to use in their complaint.

12

Appellants' equal protection, due process, and Eighth Amendment rights.

IV.   SUBSTANTIAL CLAIMS

Simply because Appellants' complaint states these claims, however, does not lead to the conclusion that the lower court had subject-matter jurisdiction.  As we noted above, in order to invoke a federal court's jurisdiction, claims cannot be "'obviously without merit'" or "'clearly foreclosed by the previous decisions of the United States Supreme Court.'" Holland/Blue Streak v. Barthelemy, 849 F.2d 987, 989 (5th Cir. 1988) (per curiam) (quoting Walsh v. Louisiana High School Athletic Ass'n, 616 F.2d 152, 156 (5th Cir. 1980)); see also Ex Parte Poresky, 290 U.S. 30, 32 (1933) (per curiam) ("The question may be plainly unsubstantial, either because it is 'obviously without merit' or because 'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy.'" (quoting Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 105 (1933))). The district court found Appellants' Eighth Amendment claim frivolous, and therefore dismissed it.

Based on the facts alleged and the context of this case, we agree with the lower court that the Eighth Amendment claim is frivolous.  Appellants argue that the Supreme Court's decision in

13

Austin v. United States, 509 U.S. 602 (1993), provides a basis for their claim under the Excessive Fines Clause. Austin made clear that a crucial question under the Eighth Amendment is whether a confiscation of property is punishment, not whether the proceeding culminating in property confiscation is a criminal or civil proceeding. See id. at 610. The argument advanced in Appellants' case would apparently be that the demolition of their buildings was punishment, and in violation of the Eighth Amendment.

Austin, however, did not overrule Ingraham v. Wright, 430 U.S. 651 (1977).[10] In Ingraham, the Court explicitly described the Eighth Amendment as being "designed to protect those convicted of crimes." 430 U.S. at 664; see also id. at 666 ("[T]he original Constitution was criticized in the Massachusetts and Virginia Conventions for its failure to provide any protection for persons convicted of crimes. This criticism provided the impetus for inclusion of the Eighth Amendment in the Bill of Rights."). It was this view of the Amendment's historical context that supported the Court's holding that the Amendment was not applicable to a case involving corporal punishment administered to schoolchildren. See id. at 669. There was no question regarding whether the paddling at issue in

---

[10] In fact, the only reference to Ingraham v. Wright came in a footnote and was in connection with Ingraham's discussion of the English Bill of Rights. See Austin, 509 U.S. at 609 n.5.

Ingraham was punishment. Thus, for Austin's focus on punishment to provide the basis for Appellants' claims, Ingraham would have to have been overruled. It was not, and this dooms Appellants' claim.[11]

## V. RIPE CLAIMS

This brings us to the question of whether the district court erred in dismissing the takings, due process, and equal protection claims as unripe. We may quickly dispose of the takings claim. We note that Appellants do not assail the City's right to demolish buildings that are dangerous or abandoned. They do not assert that the City demolished their property for a private purpose, compare Armendariz v. Penman, 75 F.3d 1311, 1321 (9th Cir. 1996) (en banc) (describing an alleged purpose of the government's action as facilitating the purchase, at a lower price, of property by a shopping-center developer), and indeed, nowhere specify an alleged purpose of the City's action. The complaint simply asserts that the demolition was undertaken

---

[11] As the lower court suggested, language in Ingraham pertaining to application of the Eighth Amendment to punishment imposed by a State is also relevant to the finding that Appellants' claim is frivolous. In Ingraham, the Court noted that "the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured formal adjudication of guilt in accordance with due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment." 430 U.S. at 671-72 n.40.

15

"without a public purpose and without just compensation in violation of the Fifth Amendment." Given Appellants' other allegations, we interpret the complaint to assert that the demolition was undertaken pursuant to an invalid law or in violation of the Bond Agreement or that it amounted to a destruction of buildings that were not, in fact, nuisances.[12]

Because a violation of the Takings Clause does not occur until just compensation has been denied, see Williamson County, 473 U.S. at 194 n.13, Appellants must use available state procedures to seek such compensation before they may bring a § 1983 takings claim to federal court.[13] See Rolf, 77 F.3d at

_____

[12] In interpreting the complaint in this manner, we make no statement as to the viability of these claims under the U.S. Constitution. The issue before us is not whether Appellants state a viable claim under the Takings Clause (unless the entire claim can be said to be entirely foreclosed under Supreme Court precedent) but rather whether they assert a right to just compensation for the government's taking of their property. Cf. Rolf, 77 F.3d at 827 n.10 (noting that under the federal law, the plaintiffs' claim would not likely be successful). If such a right is asserted, and if given their claim Appellants have an available means of pursuing just compensation from the State, Williamson County requires that the state-provided procedures first be used. We have recognized one exception to this rule — claims that the government took property for private purposes do not have to be first submitted to those procedures. See Samaad, 940 F.2d at 936 (holding that Williamson County does not require that compensation first be sought using state procedures where plaintiffs contend their property was taken for a private use).

[13] In bringing their claim for compensation to the state court, Appellants may be able to avail themselves of the steps outlined in Guetersloh v. State of Texas, 930 S.W.2d 284, 289-90 (Tex. App. 1996, writ denied), cert. denied, 522 U.S. 1110 (1998), and reserve their right to have their takings claim litigated in federal court.

827; <u>Samaad</u>, 940 F.2d at 936.[14]  Although Appellants initially brought their claims to state court, they subsequently nonsuited the City and Cherry Moving.  Appellants have not been denied just compensation, and as a result, their takings claim is unripe.

The district court, in response to Appellants' arguments that state-provided procedures are inadequate because those procedures do not provide compensation where a governmental body's police powers are used, found sufficient reason to hold that those procedures are adequate.  We have no cause to conclude otherwise.  Before us, however, Appellants contend that the state's inverse condemnation procedures do not provide for compensation in cases involving allegations that the deprivation of property occurred for a non-public use.  Based on our review of cases under Article I, section 17 of the Texas Constitution, we conclude that Appellants have not met their burden, as set forth in <u>Samaad</u>, 940 F.2d at 934-35, of establishing that they "almost certainly" would not be compensated under Texas law. <u>See, e.g.</u>, <u>Waggoner's Estate v. Gleghorn</u>, 378 S.W.2d 47, 50 (Tex.

---

[14]  We recognize a possible inconsistency between <u>Samaad</u> and <u>Rolf</u> — <u>Samaad</u> held that claims of takings for private use are not subject to <u>Williamson County</u>'s requirements, while <u>Rolf</u> held that a claim of a bad faith taking was unripe because plaintiffs had not pursued compensation through state-provided procedures.  The two can be reconciled — though perhaps not entirely satisfactorily — by reading <u>Rolf</u> to suggest that claims of takings for illegitimate, but not for private, purposes must fulfill <u>Williamson County</u>'s requirements.  Because we are held to prior panel's opinions, and because a way of reconciling the two opinions exists, we must follow <u>Rolf</u>'s lead.

1964) ("In our opinion Article 1377b is unconstitutional and void to the extent that it purports to authorize the taking of private property for a private purpose."); Maher v. Lasater, 354 S.W.2d 923 (Tex. 1962) ("Article I, § 17 prohibits the taking of property for private use."); City of Houston v. Crabb, 905 S.W.2d 669, 674 (Tex. App. 1995, no writ) (upholding jury verdict awarding compensation for demolition of property the City had not shown was a nuisance on the day it was destroyed); Atwood v. Willacy County Navigation Dist., 271 S.W.2d 137, 140 (Tex. App. 1954, writ ref'd n.r.e.)(holding that Article I, section 17 "prohibits the taking of private property for other than a public use"), appeal dismissed, 350 U.S. 804 (1955).[15]

## A.   The Effect of *Graham*

Whether the dismissal of the takings claim means the Appellants' other claims must also be dismissed as unripe is a more complex question.  In resolving it, we are guided not only by our own precedents, but also by several general principles announced by the Supreme Court.  We begin with Graham, the decision relied upon by the district court to reach its conclusion that Appellants' remaining claims must be dismissed.

---

[15]   As noted above, Appellants' complaint also asserts a violation of Article I, section 17 of the Texas Constitution. The resolution of this claim in federal court does not satisfy the requirements of Williamson County.  See Samaad, 940 F.2d at 934 (rejecting the argument that a pendent state claim could serve the purpose of rendering the federal takings claim ripe).

18

In Graham, the Court rejected use of the Fourteenth Amendment's substantive due process test and instead applied the Fourth Amendment's reasonableness standard to a claim that law enforcement officers used excessive force in the course of an investigatory stop. See Graham, 490 U.S. at 395. The Court reasoned that because the Fourth Amendment provided "an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." Id. The Court has subsequently noted that Graham applies "if a constitutional claim is covered by a specific constitutional provision," United States v. Lanier, 520 U.S. 259, 272 n.7 (1997), and if a substantive due process claim is not so covered, it is to be analyzed using substantive due process standards. See Lewis, 523 U.S. at 842-44 (analyzing an excessive use of force claim that did not involve a seizure or a search using substantive due process, rather than Fourth Amendment, standards).

The purpose of Graham is to avoid expanding the concept of substantive due process where another constitutional provision protects individuals against the challenged governmental action. See id. at 842; Albright, 510 U.S. at 274-75; Collins v. Harker Heights, 503 U.S. 115, 125 (1992) ("[T]he Court has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decisionmaking in this

19

unchartered area are scarce and open-ended.").  In essence, to the extent that there is duplication, the more explicit textual source of constitutional protection is to be used to assess the validity of the challenged action.

This does not mean, however, that the applicability of the more explicit provision pre-empts due process protections.  See Lewis, 523 U.S. at 842-44; James Daniel Good Real Property, 510 U.S. at 49 ("We have rejected the view that the applicability of one constitutional amendment pre-empts the guarantees of another.").  Moreover, it is clear that a particular action may implicate more than one constitutional protection.  See Soldal, 506 U.S. at 70 ("Certain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands.  Where such multiple violations are alleged, we are not in the habit of identifying as a preliminary matter the claim's 'dominant' character.  Rather, we examine each constitutional provision in turn.").  Thus, simply because an explicit provision applies does not mean that that provision makes inapplicable all substantive due process protections.  See Albright, 510 U.S. at 288 (Souter, J., concurring) (suggesting that due process is reserved for "otherwise homeless substantial claims"); Tri-County Indus., Inc. v. District of Columbia, 104 F.3d 455, 459 (D.C. Cir. 1997) (noting that under the circuit's prior opinions, "the requirements of the takings clause cannot be

20

said to exhaust the Fifth Amendment's substantive protection of property rights from government imposition").

A number of circuit courts have used <u>Graham</u> to support considering a substantive due process claim as invoking the Takings Clause's protections.  <u>See, e.g.</u>, <u>South County Sand & Gravel v. Town of South Kingstown</u>, 160 F.3d 834, 835 (1st Cir. 1998) (applying <u>Graham</u> to facial due process challenge to ordinance); <u>Macri v. King County</u>, 126 F.3d 1125, 1129 (9th Cir. 1997) (holding that substantive due process claim alleging no legitimate public purpose was based on conduct that implicated the Takings Clause), <u>cert. denied</u>, 522 U.S. 1153 (1998); <u>Tri-County</u>, 104 F.3d at 459 (applying <u>Graham</u>, but finding claim was not fully covered by Takings Clause); <u>Bateman v. City of West Bountiful</u>, 89 F.3d 704, 709 (10th Cir. 1996) (relying in part on <u>Graham</u> to hold that plaintiff's due process and equal protection claims were subsumed into the Takings Clause); <u>Armendariz</u>, 75 F.3d at 1318-20 (holding that plaintiffs' substantive due process claim was pre-empted by the Fourth Amendment and by the Takings Clause).  The effect of such an application may be the dismissal of the substantive due process claim because such a claim cannot be brought, <u>see, e.g.</u>, <u>Macri</u>, 126 F.3d at 1130,[16] the treatment of the entire claim as a takings claim, <u>see, e.g.</u>, <u>Bateman</u>, 89

---

[16]  We note that in <u>Macri</u>, plaintiffs had also asserted a takings claim.  126 F.3d at 1127.

F.3d at 709, or the analysis of the "remainder" using substantive due process standards, see Tri-County, 104 F.3d at 459-60.

Other courts, including our own, have analyzed substantive due process claims and takings claims separately without mentioning Graham. See, e.g., Berger v. City of Mayfield Heights, 154 F.3d 621 (6th Cir. 1998) (facial challenge to ordinance as not rationally related to legitimate governmental purpose); Texas Manufactured Housing Ass'n, Inc. v. City of Nederland, 101 F.3d 1095, 1106 (5th Cir. 1996) (facial and as-applied challenge to city zoning ordinance, alleging government action was arbitrary and capricious); Restigouche, Inc. v. Town of Jupiter, 59 F.3d 1208 (11th Cir. 1995) (arbitrary and capricious governmental application of zoning regulations); Villager Pond, Inc. v. Town of Darien, 56 F.3d 375 (2d Cir. 1995) (arbitrary conditioning of zoning compliance permits on conveyance of property to town), cert. denied, 519 U.S. 808 (1996). We, along with other courts, also have analyzed substantive due process claims in the absence of takings claims without invoking Graham. See, e.g., Hidden Oaks, Ltd. v. City of Austin, 138 F.3d 1036, 1044 (5th Cir. 1998) (as-applied challenge to placement of utility holds on buildings, arguing such holds were not rationally related to the protection of health and safety); Taylor Inv., Ltd. v. Upper Darby Township, 983 F.2d 1285 (3d Cir.) (allegation that denial of use permit was arbitrary and capricious), cert. denied, 510 U.S. 914 (1993). We may conclude

22

that these courts viewed the substantive due process claims before them as asserting rights not protected by the Takings Clause.

Although the above cited cases involve factual settings different from Appellants', we can say that a blanket rule that under Graham, the Takings Clause subsumes any substantive due process claim relating to a deprivation of property is both inconsistent with our precedents and with the approach taken by a majority of other circuit courts.[17]  Cf. Pearson v. City of Grand Blanc, 961 F.2d 1211 (6th Cir. 1992) (rejecting rationale that all arbitrary and capricious substantive due process claims are merged into taking claims).  Instead, a careful analysis must be undertaken to assess the extent to which a plaintiff's substantive due process claim rests on protections that are also afforded by the Takings Clause, and, in the proper case, by the Fourth Amendment.  See Soldal, 506 U.S. at 61.

### B.  The Effect of Williamson County

That analysis is but the first step to an assessment of whether the claims a plaintiff asserts are ripe under Williamson County.  The Court in Williamson County gave two reasons why a takings claim that involved a challenge to an application of a

---

[17]  Given the effects of Williamson County, the application of such a rule would seem to preclude any examination of whether the substantive due process claim is better analyzed as a Fourth Amendment claim.

zoning ordinance was not considered ripe: (1) the absence of a final decision, and (2) the failure on the part of the plaintiffs in that case to seek just compensation from the state. See Williamson County, 473 U.S. at 186, 194; see also Suitum v. Tahoe Reg'l Planning Agency, 520 U.S. 725, 738-39 (1997) (describing concerns underlying the Williamson County's finality requirement). If the Court considered the claim to be a due process, rather than a takings claim, the absence of a final decision still made that claim unripe. See Williamson County, 473 U.S. at 197-200.

Since Williamson County was decided, courts have applied these principles to not only substantive due process claims, but also to procedural due process and equal protection claims. In most cases, however, only Williamson County's finality requirement has been applied to claims other than the "due process takings" claim described in that case. See, e.g., McKenzie v. City of White Hall, 112 F.3d 313, 317 (8th Cir. 1997) ("Because the City's decisions to deny zoning and building permits absent surrender of the privacy buffer were final, the McKenzies' due process and equal protection claims are ripe."); Strickland v. Alderman, 74 F.3d 260, 265 (11th Cir. 1996) ("As applied due process and equal protection claims are ripe for adjudication when the local authority has rendered its final decision with respect to the application of the regulation."); Taylor Inv., Ltd., 983 F.2d at 1292-94 (applying Williamson

24

_County_'s finality rule to due process and equal protection claims involving township's revocation of use permit); _Southview Assocs., Ltd. v. Bongartz_, 980 F.2d 84, 96-97 (2d Cir. 1992) (applying only _Williamson County_'s finality requirement to claims of arbitrary and capricious action), _cert. denied_, 507 U.S. 987 (1993); _Del Monte Dunes, Ltd. v. City of Monterey_, 920 F.2d 1496, 1507 (9th Cir. 1990) ("In evaluating the ripeness of due process or equal protection claims arising out of the application of land use regulations, we employ the same final decision requirement that applies to regulatory takings claims."). _But see_ _River Park, Inc. v. City of Highland Park_, 23 F.3d 164, 167 (7th Cir. 1994) (holding that procedural due process claims in zoning cases are unripe unless available state procedures have been used). In contrast, the court below held that any due process and equal protection claims Appellants assert are subsumed into their takings claim, and thus are not ripe for review.

In so doing, the court adopted the approach of the Tenth Circuit, which applies _Williamson County_ to due process and equal protection claims "that rest upon the same facts as a concomitant takings claim." _Bateman_, 89 F.3d at 709. This rule arises from that court's "reluctan[ce] in the context of a factual situation that falls squarely within [the Takings Clause] to impose new and potentially inconsistent obligations upon the parties under the substantive or procedural components of the Due Process Clause." _Miller v. Campbell County_, 945 F.2d 348, 352 (10th Cir. 1991).

25

In effect, the Tenth Circuit appears to use reasoning analogous to <u>Graham</u>'s to support treatment of other claims as takings claims. See <u>Bateman</u>, 89 F.3d at 709 (describing its reasoning as similar to that applied in <u>Graham</u> to substantive due process claims).

Given the Supreme Court's discussions of <u>Graham</u>, its statements in <u>James Daniel Good Real Property</u> and <u>Soldal</u> regarding pre-emption and multiple claims, the other circuits' treatment of comparable issues and, last but not least, our own precedent, we think it unwise to adopt the Tenth Circuit's rule. <u>Graham</u> applies to substantive due process claims. Although we have previously held that a "related due process claim" was subject to <u>Williamson County</u>'s ripeness requirements, see <u>Rolf</u>, 77 F.3d at 827, we did not do so as a result of applying <u>Graham</u>.[18] <u>Rolf</u> also involved an equal protection claim to which we did not see fit to apply either <u>Graham</u> or <u>Williamson County</u>. See <u>id.</u> at 828. As the lower court noted, finality is not an issue in the instant case — it is clear what the City has determined to be the proper use of Appellants' property. As a result, we do not face here circumstances demanding application of <u>Williamson County</u>'s requirements to claims other than those properly characterized as takings claims.

---

[18] After acknowledging that a First Amendment claim was, in effect, a substantive due process claim, it was noted that this was the only substantive due process claim alleged. See <u>Rolf</u>, 77 F.3d at 827 n.18.

26

*C. Appellants' Claims*

We may now assess whether Appellants' due process and equal protection claims are sufficient to invoke federal question jurisdiction under <u>Graham</u> and <u>Williamson County</u>. Reviewing Appellants' complaint, we conclude that other than the claim we regard as a takings claim, the complaint includes only one "substantive due process" claim. Appellants assert that the demolition was carried out under unconstitutional laws (the CURB Ordinance and the law on which the 1991 demolition order was based). Given other language within the complaint, we read it to allege that the relevant ordinances are unconstitutionally vague, both facially and as applied. This claim invokes protections of the Due Process Clause, <u>see</u> <u>United States v. Insco</u>, 496 F.2d 204, 208 (5th Cir. 1974) ("Vaguely phrased measures run afoul of substantive due process requirements by failing to convey with reasonable certainty the statute's intended sweep."), not the Takings Clause, and thus is unaffected by <u>Graham</u>. It is also ripe for review. The Appellants' equal protection claim asserts rights not protected by the Takings Clause, and is thus not amenable to treatment as a takings claim under <u>Graham</u>. It is also ripe for review.[19]

---

[19] The City and Cherry Moving argue that Appellants' equal protection claim should be dismissed because it does not state a claim upon which relief can be granted, and cite <u>Guthrie v. Tifco Indus.</u>, 941 F.2d 374, 379 (5th Cir. 1991), for the proposition that a court may sua sponte dismiss a claim on 12(b)(6) grounds. Because <u>Guthrie</u> involved summary judgment, and not the initial

Appellants' procedural due process claims stand on more unstable ground. Appellants assert that the City's actions violated the Takings Clause, and that they were not afforded due process prior to the demolition of their buildings. The takings claim is not yet ripe, and it will only be when a court may assess the takings claim that it will also be able to examine whether Appellants were afforded less procedure than is constitutionally required. See Williamson County, 473 U.S. at 195 n.14 ("Unlike the Due Process Clause, however, the Just Compensation Clause has never been held to require pretaking process or compensation."); Bigelow v. Michigan Dep't of Natural Resources, 970 F.2d 154, 160 (6th Cir. 1992) ("Until the state courts have ruled on the plaintiffs' inverse condemnation claim, this court cannot determine whether a taking has occurred, and thus cannot address the procedural due process claim with a full understanding of the relevant facts.").

---

subject-matter jurisdiction determination, we do not find it applicable. Indeed, applying such a principle at this stage would appear directly contrary to the teachings of Bell v. Hood, 327 U.S. at 682 ("Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy."). See also Daigle v. Opelousas Health Care, Inc., 774 F.2d 1344, 1346 (5th Cir. 1985) ("Whether a federal court has jurisdiction to decide a case and whether a plaintiff has a cause of action under a federal statute are distinct inquiries that must be addressed separately."); id. at 1348 ("This circuit has . . . held that a court should not render what is, in effect, a judgment on the merits of a claim in the name of a jurisdictional inquiry.").

Appellants argue that our decision in Hidden Oaks suggests that procedural due process claims are not subject to Williamson County's requirements. See Hidden Oaks, 138 F.3d at 1045 n.6 (refusing to apply Williamson County to plaintiffs' procedural due process claim). In Hidden Oaks, plaintiffs asserted a violation of their procedural due process rights that inflicted an injury separate from any takings claim that was dismissed prior to trial. Appellants' claim is not of the same nature as they assert that they were denied the pre-demolition procedure required by the Constitution.[20] As a result, Hidden Oaks is of no assistance. In determining that Appellants' procedural due process claim is unripe, we do not apply Williamson County per se, but rather the general rule that a claim is not ripe if additional factual development is necessary. See New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans, 833 F.2d 583, 587 (5th Cir. 1987).

VI.  CONCLUSION

Although we conclude that some of Appellants' claims are properly dismissed, we find that others are sufficient to invoke subject-matter jurisdiction. We therefore AFFIRM in part,

---

[20]  We note that Appellants do not assert that the procedures mandated by the ordinances authorizing demolition of dangerous buildings are constitutionally inadequate. Instead, they allege only that they were not provided due process prior to the demolition.

29

REVERSE in part, and remand for further proceedings not inconsistent with this opinion. We leave to the district court matters related to the proper disposition of the claims we have determined to be ripe for review and of Appellants' pendent state law claims, including whether under Federal Rule of Civil Procedure 15(a) Appellants should be granted leave to amend their complaint. Each party shall bear its own costs.