REVISED, JANUARY 23, 2001

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-20686
_____


SIMI INVESTMENT COMPANY INC

                                    Plaintiff - Appellee

     v.

HARRIS COUNTY TEXAS


                                    Defendant - Appellant

_____

            Appeal from the United States District Court
               for the Southern District of Texas
_____
                      December 21, 2000

Before KING, Chief Judge, and REYNALDO G. GARZA and PARKER,
Circuit Judges.

KING, Chief Judge:

     Defendant-Appellant Harris County, Texas appeals the

district court's judgment against the County, arguing that the

district court erred in holding that the County had

unconstitutionally interfered with the property rights of

Plaintiff-Appellee Simi Investment Company, Inc.  The district

court found that the County had unlawfully prevented Simi from

gaining access to the city street adjacent to its property in contravention of Texas law. Specifically, the district court held that the County had abused its governmental power and violated Simi's substantive due process rights by inventing and claiming ownership of a nonexistent five-foot by 3000-foot county park, which blocked Simi's lawful access to the street. For the following reasons, we AFFIRM the judgment of the district court, including the grant of attorneys' fees; however, we VACATE and REMAND to determine the amount of those attorneys' fees in a manner consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This dispute centers around the real property (the "Simi Property") owned by Simi Investment Company, Inc. ("Simi") which is located in downtown Houston in close proximity to the Houston Astrodome stadium.[1] More specifically, the Simi Property is

---

[1] We are guided through the curious history and development of this particular strip of land by the stipulated record of exhibits which was submitted by the parties and was adopted by the district court as the entire record. On August 12, 1996, the district court entered a Conference Memorandum which stated that the case would be resolved by analyzing the documentary evidence submitted. On September 23, 1996, the district court entered a second Conference Memorandum recording that the parties had stipulated to exhibits 1 through 25 and that the exhibits and other documents submitted would constitute the whole record. On August 26, 1998, the district court allowed Simi to supplement the record with documents not previously turned over by the County. In addition, we rely on the "Chronology" included as an addendum to the district court opinion. See Simi Investment Co. Inc. v. Harris County, Tex., 13 F. Supp. 2d 603, 609-13 (S.D. Tex. 1998) (addendum to opinion).

situated adjacent to Fannin Street at the intersection of Interstate Loop 610 ("Loop 610") and Fannin Street. Simi sought from the City of Houston ("City") access to Fannin Street from the Simi Property, but was denied access by the City because Harris County (the "County") claimed an interest in an intervening five-foot sliver of land that runs alongside this property, separating it from Fannin Street.

This land dispute finds its origin in the early 1960s when the construction of the Astrodome led to increased development in the area surrounding what is now the Simi Property. Two of the major investors in the area were Roy Hofheinz and R.E. Smith. Hofheinz was a former Harris County judge and had been the chair of the County's governing board, the County Commissioners Court. Hofheinz was also President of the Houston Sports Association (the "HSA"), which leased the Astrodome from the County. Hofheinz-Smith owned property north of the Simi Property site, which was also located along the eastern side of Fannin Street. As a result, Hofheinz-Smith and the HSA had control of much of the property surrounding the Astrodome.

In conjunction with building the Astrodome, the County acquired rights-of-way for streets leading to the stadium. In 1961, the County Commissioners Court requested the consent of the City to acquire one of those rights-of-way by extending the

length of Fannin Street to Loop 610. The City Council approved the location and alignment of the proposed street, and the land was purchased from the Trustees of the Hermann Hospital Estate and conveyed to the County for this purpose. The Hermann Hospital Estate right-of-way consisted of a 20.67 acre tract of land that was approximately 220 feet wide and 4100 feet in length, running north-south alongside the Astrodome site. This north-south right-of-way was bounded on the west by the Astrodome and surrounding grounds, and on the east by several privately owned properties (including the Hofheinz-Smith property and what is now the Simi Property).

The deed granting the land to the County provided that the property was being purchased with the intention of extending Fannin Street "with such extension to run in a North-South direction along the Eastern side of the Property described above, with the remaining Western portion of said Property to be used for street purposes or included in a park and stadium site lying along the West side of said Property." Pursuant to this deed, the County Commissioners Court issued an order on December 11, 1961, stating that "Harris County is to move back the existing fences to the new right of way line."[2] Subsequently, Fannin

---

[2] The district court found that "[a]fter exhaustive search by the County and Simi, no later order of the Commissioners Court was found that modified in any way the alignment of the Fannin Street right of way described in the Hermann deed and the commissioners order of December 11, 1961." Presumably, the original location of the fence denotes the proper right-of-way

Street was constructed as described in the deed on the eastern side of the conveyed property, and fences were erected directly abutting the Simi Property.

The original maps accompanying the County's acquisition of the right-of-way and describing the location and alignment of Fannin Street could not be found, and, thus are not a part of the record. The first site-specific document in the record is dated October 16, 1961, and was created when engineers for the County prepared a plat of the area depicting the land to be conveyed to the County for the right-of-way. The plat showed the granted land directly abutting the Simi property line. This plat, however, was not a survey and did not include the exact location of Fannin Street within the right-of-way.

At some time after 1961, this plat was altered to include the placement of Fannin Street and also, most relevant for this case, a strip of land set off from the eastern side of Fannin Street lying in between the street and the adjoining private properties. This five-foot by 3000-foot strip of land[3] is the county "park" now at issue.

As drawn in the revised plat, the Fannin Street right-of-way runs north-south, directly abutting the Hofheinz-Smith property.

line.

[3] From our review of the record, the 3000-foot measure is an apparent approximation that was adopted by the district court and has been accepted by both parties.

However, once past the southern boundary of the Hofheinz-Smith property line, the right-of-way is shown to make a ninety-degree turn west for five feet, and then it continues south to the 610 Loop. The result is the creation of a five-foot strip of land that separates all of the property south of the Hofheinz-Smith property from Fannin Street, but leaves the Hofheinz-Smith property directly abutting the Fannin Street right-of-way. No description or reason is apparent for this offset, nor why the offset begins just south of the Hofheinz-Smith property.[4] This plat also includes the words "location questionable" drawn to indicate the uncertain location of Fannin Street. There is no revised date on the altered plat. The County contends that this plat depicts the correct location of all relevant boundaries, with Fannin Street running north-south within the original right-of-way and a thin county park on the east side also running parallel to Fannin Street.

From this uncertain beginning, the County's "park" has withstood several legal and administrative challenges to its existence and control. First, in 1964, Texaco, Inc. requested access to Fannin Street from property it owned on the corner of Fannin and the 610 Loop. This request was submitted to the County Commissioner and was then forwarded to the County

---

[4] The result of the offset is that the Hofheinz-Smith properties are granted full access to Fannin Street, but all properties south of the Hofheinz-Smith land are denied access.

Engineer.  For an unknown reason, the County Engineer sought approval from Hofheinz, as President of the HSA.  Hofheinz stated that the HSA was unalterably opposed to the access because the strip of land east of Fannin was included in the original HSA lease of land for the Astrodome site and, therefore, was under HSA's control.  This assertion was factually erroneous because HSA was never granted control of the land.  However, Hofheinz's objection led the County to deny Texaco access to Fannin Street.

Similarly, in 1969, property owners sought a mandatory injunction against the County, requesting that the fence abutting their properties be removed to grant access to Fannin Street.  A take-nothing judgment was affirmed by a Texas court of appeals, which denied the property owners access across the County's land. See Lovett v. County of Harris, 462 S.W.2d 405, 408 (Tex. Civ. App.—Houston [1st Dist.] 1970, writ ref'd n.r.e).  The court found that the erection of the fence was not an unconstitutional taking under Texas law because the intervening strip of land separating the property owners from Fannin Street had not been dedicated for street purposes.  See id.[5]

Most recently, in 1984, Sterling B. McCall, Jr., the owner of McCall Toyota, requested that he be allowed to keep a driveway that had been built on his property which provided the property with ingress and egress onto Fannin Street.  This request was

_____

[5]  The reasoning of the Lovett decision will be discussed in detail infra.

7

denied by the County Commissioners Court, and McCall was required to fence in the driveway to block access to Fannin Street.

The area designated as a park has also been subject to encumbrances that over its history have helped define its status and ownership. In 1974, Entex, a gas company, constructed a gas line running north-south along the east side of Fannin Street. This gas line was buried inside the land now claimed as a park. The district court found that "[n]o Commissioner's Court Order or other document can be found to show the County authorized an easement in the 'park' to Entex." In 1978, the City of Houston approved a plan and constructed an eight-inch water line that crossed the park. Again, the district court found no Commissioners Court order authorizing the easement across the park for the water line. Finally, in 1993, the Metropolitan Transit Authority of Harris County ("METRO") approved construction of a sidewalk on the park property, running alongside the Simi Property. No approval was sought from the County for an easement.

Control of Fannin Street, itself, was ceded from the County to the City of Houston in 1974. In that year, the County removed Fannin Street from its road logs.

From 1981 to 1984, Simi began acquiring property along Fannin Street.[6] In 1994, Simi submitted to the City a request

---

[6] Simi owns Lots 1, 2, 3, and 4 in Block 68; Lots 1, 2, 3, 4, 5, and 6 in Block 69; Lots 1, 5, and 6 in Block 70 in Knight's

for driveway access from its property to Fannin Street.  Richard
Scott, the Technical Director/City Engineer of the Department of
Public Works and Engineering for the City, responded that the
City "would be in a position to process [the] application, and
likely approve it," but for the fact that the County has claimed
an interest in the strip of land.  Simi then applied to the
County for access.  This request was denied based on the
assertion that the County owned parkland located between Fannin
Street and the Simi Property.

Simi sued the County in state court.  Simi sought damages
and injunctive relief pursuant to Article 1, Section 17 of the
Texas Constitution and the Fifth and Fourteenth Amendments to the
United States Constitution.  In addition, Simi sought a
declaration that its land directly abutted the right-of-way of
Fannin Street.  The County removed the suit to federal court.
Simi filed a motion to remand, stating that its federal takings
claim was not ripe.  The district court did not rule on this
motion for remand.  In federal court, Simi added a 42 U.S.C.
§ 1983[7] substantive due process claim, alleging that the County's

_____

Main Street Addition.

[7]  42 U.S.C. § 1983 reads in relevant part:

Every person who, under color of any statute, ordinance,
regulation, custom, or usage, of any State or Territory or
the District of Columbia, subjects, or causes to be
subjected, any citizen of the United States or other person
within the jurisdiction thereof to the deprivation of any
rights, privileges, or immunities secured by the

9

denial of access to an adjoining right-of-way arbitrarily and capriciously denied Simi a property interest established under Texas law.

The district court held two conferences during which the parties were required to submit all relevant documents and exhibits and to stipulate to the agreed facts. Both parties then moved for partial summary judgment based on this established record.[8]

On August 26, 1998, the district court issued an Interlocutory Judgment and an Opinion on Judgment solely on the issue of the existence of the park. The district court reserved deciding the issue of damages or attorneys' fees. The court found in its Interlocutory Judgment that: (1) "Harris County had never established a park"; (2) "Harris County had no interest in

_____

> Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (1994).

[8] The County raises a preliminary challenge to the entry of summary judgment based on this stipulated record. We find no merit in this challenge as it is well established that a district court may enter summary judgment after providing notice and instructing the parties to submit all relevant evidence. See Celotex v. Catrett, 477 U.S. 317, 326 (1986) ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence."). In conference, the district court asked the parties to submit all relevant documents and exhibits. It was from this evidentiary basis that the district court decided to grant the request for partial summary judgment. We find no error in these actions.

10

an intervening 5-foot by 3,000-foot strip east of Fannin Street and west of [the Simi Property] making illegal its interference with the owners' relation to the City of Houston and Fannin Street"; (3) "Harris County had ceded to the [C]ity of Houston all of its right, title, and interest in the eastern-most 100 feet of land conveyed to it by the Hermann Estate"; and (4) "[t]he City of Houston's Fannin Street right of way abuts directly and fully the west boundary of [the Simi Property]."

After the Interlocutory Judgment, two hearings were held on damages and attorneys' fees. In addition, Simi introduced supplemental evidence into the record involving the County's reasons for denying property owners access to Fannin Street. The district court issued a Final Judgment on April 21, 1999, incorporating the Interlocutory Judgment and adding that the County was liable for $823,540 in damages, $367,000 in attorneys' fees, and $116,994.32 in expenses. On May 13, 1999, the district court issued Supplemental Findings that: (1) the County arbitrarily interfered with Simi's property rights; (2) the interference had no relation to a legitimate governmental interest; (3) the interference was an abuse of governmental power; (4) the County persisted in defending its claim to the park in bad faith and used the litigation to vex and oppress

11

Simi; and (5) the County deliberately violated Simi's rights under the United States Constitution.[9]

The County timely appeals.

## II. STANDARD OF REVIEW

We review a grant of summary judgment[10] de novo, applying the same criteria used by the district court in the first instance.  See Norman v. Apache Corp., 19 F.3d 1017, 1021 (5th Cir. 1994); Conkling v. Turner, 18 F.3d 1285, 1295 (5th Cir. 1994).  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

---

[9] The County challenges these Supplemental Findings as not supported by the evidence.  We disagree.  From the extensive exhibits and documentary evidence submitted by both parties, the district court could well establish a basis for liability.  In short, without proof that a county park ever existed, the County's justification for interfering with Simi's access to Fannin Street fails, and becomes an arbitrary and capricious act. We, therefore, find no error in a damages award based on that liability, and find no error in the Supplemental Findings based on the district court's review of the evidence.

[10] The County appeals the Final Judgment issued on April 21, 1999.  While not designated as such, we interpret this Final Judgment as a final decision on summary judgment resolving all issues in favor of Simi.  Simi had initially moved for partial summary judgment requesting a declaration that the County was interfering with its property.  The County cross-moved for summary judgment on this issue.  The district court's Interlocutory Judgment resolved the partial summary judgment motion in Simi's favor.  In its Final Judgment, the district court incorporated the Interlocutory Judgment into its order and resolved all outstanding issues.

12

is entitled to judgment as a matter of law."  FED. R. CIV. P.

56(c);  see also Celotex Corp. v. Catrett, 477 U.S. 317, 323

(1986).


### III. SUBJECT MATTER JURISDICTION

We exercise plenary review of a district court's subject

matter jurisdiction.  See Rutherford v. Harris County, Tex., 197

F.3d 173, 189-90 (5th Cir. 1999); Taylor-Callahan-Colman Counties

v. Dole, 948 F.2d 953, 956 (5th Cir. 1991).

As a threshold matter, the County argues that the district

court lacked federal subject matter jurisdiction to decide the

case.  We find that the district court had subject matter

jurisdiction by reason of Simi's § 1983 substantive due process

claim.

In its Opinion on Judgment, the district court provided

three grounds for its jurisdiction.  First, the court found that

"[t]he facts pleaded state claims under the Texas Constitution to

which no accommodative delay is due. . . .  Whatever the eventual

fate of Simi's claim for compensation, Simi is entitled to use

this court's authority to correct the county's continuing non-

possessory interference with its land."  See Simi, 13 F. Supp. 2d

603, 605 (S.D. Tex. 1998) (citations omitted).  Second, the

district court found that Simi had stated claims against the

County under the Fourteenth Amendment, the Civil Rights Act of

13

1866, and 42 U.S.C. § 1983.  See id.  As these claims are ripe without exhaustion of state remedies, the court found proper jurisdiction.  Finally, the district court held that Simi is entitled to seek declaratory relief under both Texas and federal law.  See id.

The County correctly argues that the state law claims, standing alone, do not provide federal jurisdiction.  Further, we agree that Declaratory Judgment Act claims, without another basis for jurisdiction, cannot support the district court's jurisdiction.  See Lawson v. Callahan, 111 F.3d 403, 405 (5th Cir. 1997) ("[I]t is well settled that [the Declaratory Judgment Act] does not confer subject matter jurisdiction on a federal court where none otherwise exists.").  The County thus contends that the only potential federal claim available to Simi is a "takings" claim under the Fifth and Fourteenth Amendments, and that Simi has conceded that such a claim is not ripe for review.[11]  While we agree that the takings claim is not ripe for review, this argument does not dispose of Simi's suit because the § 1983 substantive due process claim was properly before the district court.

In order to unpack the jurisdictional basis for the district court's holding, we revisit our recent decision in John Corp. v.

---

[11] As stated, Simi opposed removal to federal court on the grounds that a ripe federal takings question was not presented for adjudication.  See Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 199 (1985).

14

City of Houston, 214 F.3d 573, 582 (5th Cir. 2000), in which we held that substantive due process claims alleging deprivations of property are not necessarily subsumed under the Takings Clause. As this is precisely the issue raised by the County, we find John Corp. to be dispositive as to the question of jurisdiction.

John Corp. recognized that "[i]ndividuals may look to several constitutional provisions for protection against state action that results in a deprivation of their property." Id. at 577. One of those provisions is the substantive due process component of the Fourteenth Amendment which guarantees that individuals shall not be deprived of their property without due process of law. See U.S. CONST. amend. XIV, § 1; see also John Corp., 214 F.3d at 577 ("Substantive due process, by barring certain government actions regardless of the fairness of the procedures used to implement them, [] serves to prevent governmental power from being used for purposes of oppression." (alterations in original) (citations and internal quotation marks omitted)). Another provision is the Takings Clause of the Fifth Amendment. See U.S. CONST. amend. V; see also John Corp., 214 F.3d at 577; Samaad v. City of Dallas, 940 F.2d 925, 933 (5th Cir. 1991) ("The Takings Clause of the Fifth Amendment directs that 'private property [shall not] be taken for public use, without just compensation.' The Supreme Court has held that the clause applies to the states through the Fourteenth Amendment." (citations omitted)). In the instant case, once Simi had its

15

case removed to federal court, it explicitly pled a due process claim, recognizing that it did not have a takings claim.[12]

Nevertheless, the County argues that we must decide this case under the Takings Clause because "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." Albright v. Oliver, 510 U.S. 266, 273 (1994) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)). Again, John Corp. controls our analysis. We take no issue with the principle inherent in the Supreme Court's Albright/Graham analysis; however, in the instant case, we find a takings analysis does not exhaust Simi's constitutional claims. John Corp. found that under Albright/Graham, a more explicit provision does not necessarily preempt due process protections, and that substantive due process claims can survive a related takings argument:

> This does not mean, however, that the applicability of the more explicit provision pre-empts due process protections.

---

[12] Simi's precise claim is that the County arbitrarily interfered with its property rights, not that the County sought to acquire or regulate the use of the property. Simi argues that in the forty-year history of this strip of land, the County never tried to "take" the Simi Property in a constitutionally significant sense, but rather abused its power to frustrate Simi's rightful use of that land. Similarly, the County did not seek to condemn Simi's right of access to the property in an inverse condemnation action. The County has simply wrongfully interfered with Simi's right of access for no legitimate public purpose.

16

> See [County of Sacramento v.] Lewis, 523 U.S. 833, 842-44 (1998); [United States v.] James Daniel Good Real Property, 510 U.S. 43, 49 (1993) ("We have rejected the view that the applicability of one constitutional amendment pre-empts the guarantees of another."). Moreover, it is clear that a particular action may implicate more than one constitutional protection. See Soldal [v. Cook County, Ill.], 506 U.S. 56, 70 (1992) ("Certain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands. Where such multiple violations are alleged, we are not in the habit of identifying as a preliminary matter the claim's 'dominant' character. Rather, we examine each constitutional provision in turn."). Thus, simply because an explicit provision applies does not mean that that provision makes inapplicable all substantive due process protections. See Albright, 510 U.S. at 288 (Souter, J., concurring) (suggesting that due process is reserved for "otherwise homeless substantial claims").

John Corp., 214 F.3d at 582.[13] Our limited holding in John Corp. is similarly limited here; we find only that when a state interferes with property interests, a substantive due process claim may survive a takings analysis and, therefore, provide jurisdiction for a federal court.

As alleged, there exists illegitimate governmental conduct that has deprived Simi of its property rights for the benefit of private interests. Because Simi submitted sufficient evidence to

---

[13] The recognition that the Takings Clause does not subsume all substantive due process claims does not end the ripeness inquiry. There also must be a final decision from which to appeal. As we stated in John Corp., "a careful analysis must be undertaken" to determine if there has been a final decision, the lack of which would render the claim not ripe. Id. at 584 ("If the Court considered the claim to be a due process, rather than a takings claim, the absence of a final decision still made that claim unripe."). As the County's decision to claim ownership of the park has been final for over forty years, and was in 1994 the justification for denying Simi access to Fannin Street, we are persuaded that a final decision has been made.

17

support its § 1983 substantive due process claim based on an allegedly arbitrary and unlawful attempt to interfere with private property rights, we reject the County's argument that the district court did not have federal subject matter jurisdiction.

## IV. SUBSTANTIVE DUE PROCESS

The determination that the district court had jurisdiction to decide the federal question of substantive due process, however, does not resolve the merits of Simi's claim. Our review of the County's actions must be measured against the deferential "rational basis" test that governs substantive due process. See FM Prop. Operating Co. v. City of Austin, 93 F.3d 167, 174 (5th Cir. 1996) ("[G]overnment action comports with substantive due process if the action is rationally related to a legitimate governmental interest."). "Whether this 'rational relation' in fact exists is a question of law that we review de novo." Hidden Oaks Ltd. v. City of Austin, 138 F.3d 1036, 1044 (5th Cir. 1998).

"A violation of substantive due process, for example, occurs only when the government deprives someone of liberty or property; or, to use the current jargon, only when the government works a deprivation of a constitutionally protected interest." Brennan v. Stewart, 834 F.2d 1248, 1257 (5th Cir. 1988) (internal quotation marks and citations omitted); see also DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592, 601 (3d Cir. 1995) ("[I]n

18

the context of land use regulation, that is, in situations where the governmental decision in question impinges upon a landowner's use and enjoyment of property, a land-owning plaintiff states a substantive due process claim where he or she alleges that the decision limiting the intended land use was arbitrary or capricious.").

Substantive due process analysis is appropriate only in cases in which government arbitrarily abuses its power to deprive individuals of constitutionally protected rights.  Therefore, recognizing that reliance on substantive due process must be taken with the "utmost care," Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992), we emphasize the particularly odd factual situation in this case, and the length and degree of governmental abuse and, thus, limit our holding to the type of blatant governmental interference with property rights that is now before us.

### A. The Constitutional Right at Issue

To prevail on a substantive due process claim, Simi must first establish that it held a constitutionally protected property right to which the Fourteenth Amendment's due process protection applies.  See Spuler v. Pickar, 958 F.2d 103, 106 (5th Cir. 1992) (citing Baker v. McCollan, 443 U.S. 137, 146-47 (1979)); see also Hidden Oaks, 138 F.3d at 1046 ("In order to assert a violation of this amendment, one must at least

19

demonstrate the deprivation of a protected property interest established through some independent source such as state law." (internal quotation marks and citations omitted)). The nature of the property interest therefore must be determined by Texas law. See Spuler, 958 F.2d at 106; see also Hidden Oaks, 138 F.3d at 1046 ("Under this analysis, the hallmark of property . . . is an individual entitlement grounded in state law, which cannot be removed except for cause." (internal quotation marks and citations omitted)).

Under Texas law, this first issue is resolved in Simi's favor. "It is the settled rule in this state that an abutting property owner possesses an easement of access which is a property right; that this easement is not limited to a right of access to the system of public roads; and that diminishment in the value of property resulting from a loss of access constitutes damage." State v. Heal, 917 S.W.2d 6, 9 (Tex. 1996) (internal quotation marks omitted) (quoting DuPuy v. City of Waco, 396 S.W.2d 103, 108 (Tex. 1965)); see also City of Beaumont v. Marks, 443 S.W.2d 253, 255 (Tex. 1969) ("It is well settled that abutting property owners . . . have certain property rights in existing streets and highways in addition to their right in common with the general public to use them. Generally, the most important of these private rights is the access to and from the highway or street."); State v. Meyer, 403 S.W.2d 366, 370 (Tex. 1966); Lethu Inc. v. City of Houston, 23 S.W.3d 482, 485 (Tex.

20

App.—Houston [1st Dist.] 2000, no pet.); State v. Northborough

Ctr., Inc., 987 S.W.2d 187, 190 (Tex. App.—Houston [14th Dist.]

1999, pet. denied).  As the district court found, "Simi's western

boundary is the same as the Hermann-Fannin-County-City eastern

boundary; they abut by definition."  Therefore, if Simi is

correct in its assertion that no park exists or has ever existed,

its property unquestionably abuts the Fannin Street right-of-way,

and the County's interference with this access is a violation of

Texas law.[14]

---

[14]  The County's interference with Simi's property right of
access to the abutting street also provides reason for rejecting
another of the County's procedural arguments – namely that the
statute of limitations bars Simi's claim.  Under Texas law,
"limitations is not a defense to an action to abate a continuing
nuisance."  Stein v. Highland Park Indep. Sch. Dist., 540 S.W.2d
551, 554 (Tex. Civ. App.—Texarkana 1976, writ ref'd n.r.e.); City
of Dallas v. Early, 281 S.W. 883 (Tex. Civ. App.—Dallas 1926,
writ dism'd).  We agree with the district court that Simi has
alleged a continuing nuisance, asking for abatement and damages
of its denial of access to an abutting street.  "A continuing
nuisance is a condition of such character that it may continue
indefinitely."  Jamail v. Stoneledge Condo. Owners Ass'n, 970
S.W.2d 673, 676 (Tex. App.—Austin 1998, no pet.) (citing 66
C.J.S. NUISANCE § 4 (1950)).  "A private nuisance is a
nontrespassory invasion of another's interest in the private use
and enjoyment of land."  Id. (citing RESTATEMENT (SECOND) OF TORTS
§ 821D).  In the instant case, the denial of access unreasonably
interferes with the rights of property owners.  It is therefore a
private, continuing nuisance under Texas law, which precludes the
statute of limitations defense asserted by the County.
    The district court did recognize, however, that "limitations
may bar the recovery of damages that accrued more than two years
before suit".  Simi, 13 F. Supp. 2d at 606; see also Stein, 540
S.W.2d at 554 ("[A]ppellant [would not] be barred from recovery
of damages for injuries suffered during the two years immediately
prior to filing of her suit.").  From our review of the record,
it appears that the district court limited its determination of
damages to damage occurring within this time period.  In the
October 29, 1999, hearing on damages, the district court made

21

### B. The Substantive Due Process Violation

Satisfied that the County's blockage of access implicates a constitutionally protected property right, we must ask next whether this denial is rationally related to a legitimate governmental interest. See FM Prop., 93 F.3d at 174. "The question is only whether a rational relationship exists between the [policy] and a conceivable legitimate objective. If the question is at least debatable, there is no substantive due process violation." Id. (alteration in original) (citations omitted). Even under this low threshold, we are unpersuaded that a rational basis exists to justify the County's interference with Simi's property rights.

In brief, it is apparent from the record that the County cannot demonstrate that a five-foot park ever existed in between Fannin Street and the Simi Property. Further, we can ascertain no rational reason for the County to deny abutting owners access to the street when the City of Houston now has complete jurisdiction over Fannin Street. Most troubling, however, the record reflects what the district court found to be an illegitimate plan to benefit the private interests of Hofheinz-Smith whose properties were financially benefitted by the denial of access to the other properties abutting Fannin Street. As

reference to a four-year time-frame for damages. As the original suit was filed in 1996, the 1999 determination of a four-year time period fits well within the statutory time limit for recovering damages.

22

will be discussed in detail below, the evidence demonstrates that the County acted arbitrarily in inventing a park and, thus, acted without a rational basis in depriving Simi of a constitutionally protected interest.

The dispositive question in this case is whether or not there ever was a park. The district court found that the County had never established a park. We agree.

First, the County has failed to provide any official documentation of the existence of a park. None of the five surveys included in the record shows any sign of a county park. The 1978 survey prepared by R.A. Peyton & Associates for the City of Houston shows an eight-inch water main crossing Fannin Street without reference to an intervening county park. The 1988 survey prepared for the Holly Hall Home for the Retired, located north of the Simi Property does not show a park. The 1991 survey prepared by the South Texas Surveying Associates Inc. shows Simi's property directly abutting Fannin Street. The 1993 survey prepared by PGAL Engineering for METRO in order to install a sidewalk on the strip makes no mention of a county park. Finally, in 1996, Karen Rose Engineering & Surveying completed a survey that shows the east line of the Fannin Street right-of-way and the Simi property line to be the same. All of the above surveys were signed and sealed by registered professional surveyors.

These surveys also support Simi's claim that the Fannin Street right-of-way has always abutted the eastern properties, including the Simi Property. The district court found that the Hermann Hospital Estate deed determined the proper boundaries of the right-of-way. The deed provided that the Fannin right-of-way would run along the east side of the Astrodome property with "the remaining western portion of said Property to be used for street purposes or included in a park and stadium site lying along the West side of said Property." Under this deed, no parkland was reserved on the east of Fannin Street, and the right-of-way apparently was intended to extend to Simi's property line. No County Commissioners order changed this initial understanding of the right-of-way.[15] In fact, this understanding was confirmed when the County moved back the fences to the existing property line abutting what is now Simi's property.

In contrast, the sole descriptive evidence presented by the County was the altered version of the 1961 unsigned and unofficial plat. The altered version of the plat is of limited persuasive authority because it provides no information about the purpose or date of the alteration, and includes the language

---

[15] As the district court recognized, "A county can act only through an official 'commissioners court order' to alter a thoroughfare." Simi, 13 F. Supp. 2d at 607 (citing TEX. TRANSP. CODE ANN. § 251.051(b)(2) (1996), which states in relevant part: "A unanimous vote of the commissioners court is required . . . to alter a public road, except to shorten it end to end."). The County has not provided any subsequent Commissioners Court order suggesting that the Fannin Street right-of-way was ever altered.

24

"location questionable" to denote the uncertain placement of Fannin Street.  Without some justification for why a five-foot setoff was created just south of the Hofheinz-Smith land, conveniently blocking all of the other property owners, we are compelled to find that this plat cannot carry the burden of establishing the County's park.

The County also relies on Lovett v. County of Harris, a Texas Court of Civil Appeals case that decided an earlier dispute about this strip of land.  See 462 S.W.2d 405 (Tex. Civ. App.—Houston [1st Dist.] 1970, writ ref'd n.r.e.).  As a procedural matter, we find that the County has waived this issue for purposes of res judicata as it inexplicably failed to raise this argument until six months after the district court's Interlocutory Judgment and three years after the initial

complaint.[16]  However, as the case provides a discussion about the disputed land, we address its reasoning.

Lovett involved a suit by landowners whose property overlapped some of the current Simi Property.  These landowners sought a mandatory injunction against the County to remove a six-foot chain-link fence, which ran along the property line and separated the Fannin Street right-of-way and their properties.  See id. at 406.  The court denied the request for an injunction finding that: (1) Fannin Street did not abut the landowners' property; (2) a 16.6 foot strip of land intervened between Fannin Street and the landowners' property; (3) neither the deed nor the City of Houston had dedicated the 16.6 feet of land as being used

---

[16]  Nevertheless, the County contends that res judicata bars Simi's claim because this prior state court judgment supports the County's ownership of the strip of land.  Again, we need not reach the merits of this claim, because the County failed to raise this issue as an affirmative defense.

"Res judicata is an affirmative defense which is considered waived if not specifically pleaded in the answer or in an amended answer permitted under FED. R. CIV. P. 15(a)."  Banc One Capital Partners Corp. v. Kneipper, 67 F.3d 1187, 1199 (5th Cir. 1995); Mozingo v. Correct Mfg. Corp., 752 F.2d 168, 172 (5th Cir. 1985) ("[R]es judicata, and hence collateral estoppel, is an affirmative defense which if not pled is considered waived."). District courts, of course, have discretion to allow late amendments "when no prejudice would result to the other party, and the ends of justice so require."  See Mozingo, 752 F.2d at 172.  Our review is under an abuse of discretion standard.  See Morgan Guar. Trust Co. v. Blum, 649 F.2d 342, 345-46 (5th Cir. Unit B July 1981).

In the instant case, the County did not raise the defense until three years after the original suit was filed and more than six months after the district court resolved the liability issues in its Interlocutory Judgment.  We find that the district court did not abuse its discretion in denying the County's res judicata defense.

26

for street purposes; and (4) there was no taking of land under Article I, Section 17 of the Texas Constitution. <u>See id.</u> at 406-07.

This holding, while seemingly supportive of the County's claim, fails to carry the argument. First, we note that the <u>Lovett</u> court affirmed the lower court's decision which, as the <u>Lovett</u> court noted, did not include any findings of fact or conclusions of law.[17] Second and more important for our purposes, no showing was made that any county park existed, or even that the County argued that a park existed on the land. All that <u>Lovett</u> proves is that, as of 1970, the County held ownership to the eastern part of Fannin Street, a conclusion with which all parties agree. Third, the <u>Lovett</u> decision supports the contention that the Fannin Street right-of-way (if not the street) extended to the boundary of the Simi Property. As this is where the disputed fence was placed, it is apparent the county land abuts the Simi Property. Finally, the state law takings

---

[17] The <u>Lovett</u> court stated:

> The appellants, as movants in the trial court, had the burden of proof. No findings of fact or conclusions of law were requested or made, so we cannot say that the trial judge necessarily held with respect to all of these matters as the points of error assert that he did. His decision may well have been based, in part, on the appellants' failure to sustain their burden of proof as to some of their allegations.

<u>Lovett</u>, 462 S.W.2d at 407.

27

holding is irrelevant to our analysis involving the existence of a substantive due process violation.

Even accepting the factual findings of the Lovett court, the issue left open is what happened to the 16.6 foot strip once the County yielded jurisdiction over Fannin Street to the City of Houston in 1974. It is undisputed that Fannin Street was ceded to the City, but there is no record that in doing so, the County retained an interest in a remaining five-foot strip of land. Once the City of Houston took responsibility for the street and the accompanying traffic and maintenance responsibilities, we are hard pressed to find a reason for the County's retention of five feet out of the original 16.6 feet of land.

Furthermore, the County's claim that a park has always existed is belied by the fact that the park has not been treated as such by the County. City gas lines, water lines, and a sidewalk were all constructed on the park without receiving proper authorization or an easement from the County. As the district court found in its "Chronology":

> The County and Simi Investment agree that the County cannot sell or otherwise encumber its park land unless the encumbrance is approved by Commissioners Court Order with public notice under a state statute. The County and Simi Investment agree that no Commissioners Court Order can be found authorizing Entex, Houston, or METRO to construct facilities on the property and further, that there is no evidence that the County complied with the statutory notice requirements to convey an interest in this property to Entex, the City, or METRO.

<u>Simi</u>, 13 F. Supp. 2d at 611-12.  Further, owners of other properties along Fannin Street have developed their land in a manner that demonstrates that no park exists.  For example, the owners of the Holly Hall tract north of the Simi Property along Fannin Street developed their property with a twenty-five foot setback from the street, pursuant to local ordinance.  This twenty-five foot setback would not have been necessary if a five-foot park intervened between the street and the property.

From the foregoing, we agree with the district court that "Harris County has no interest in an intervening 5-foot by 3,000-foot strip east of Fannin Street and west of Knight's Main Street Addition [the Simi Property] and Holly Hall property, making illegal its interference with the owners' relation to the City of Houston and Fannin Street. . . . [and] Harris County has ceded to the city of Houston all of its right, title, and interest in the eastern-most 100 feet of land conveyed to it by the Hermann Estate."  <u>Simi</u>, 13 F. Supp. 2d at 612.

Measured against the rational basis test, a nonexistent park used by County officials to interfere with private property interests is clearly arbitrary, capricious, and violative of due process.  "While the 'rational basis' standard is the least demanding test used by the courts to uphold [governmental] action, it is not 'toothless.'"  <u>Berger v. City of Mayfield Heights</u>, 154 F.3d 621, 625 (6th Cir. 1998) (quoting <u>Mathews v. Lucas</u>, 427 U.S. 495, 510 (1976)).  More damaging to the County's

argument, the only basis in the record to explain the County's interference with access appears to be that - as the district court recognized - this impediment would benefit the privately held Hofheinz-Smith properties and the HSA.

The record clearly suggests that creation of a park worked to enhance the value of the Hofheinz-Smith properties.[18]  As the district court found, "interestingly, that ridiculously narrow park limits the access of only those property owners who would compete with the Hofheinz-Smith interests."  Simi, 13 F. Supp. 2d at 607.  Proof of this influence began in 1964 when the County denied Texaco the right of access to Fannin Street on the basis of Hofheinz's objection.  Furthermore, we note that the original

---

[18]  Two letters included in the record from County officials support the understanding that the County had interfered with the private property owners to benefit Hofheinz-Smith and the HSA.  A March 14, 1985 letter from Richard Doss, County Engineer for the County, to El Franco Lee, Commissioner, stated in relevant part,

> [T]he lots . . . were denied access to Fannin Street to prevent the establishment of businesses that could conceivably compete with the stadium operation.  Surely, before any permission were granted the Houston Sports Association should be consulted.

Similarly, an August 20, 1991 letter from Ricardo Rivero, Technical Assistant, to County Engineer Terry A. Anderson reiterated this understanding, "[T]he lots and streets in Knights Main Street Addition [the Simi Property] were denied access to Fannin Street to prevent the establishment of businesses which conceivably would compete with the operation of the Dome stadium."  While we recognize that these letters are not binding on the County, they are probative, supporting the district court's Supplemental Finding that "[t]he [County's] interference had no relation to a legitimate governmental responsibility of the county whether characterized as public health, safety, or general welfare."

request to gain access to the street was denied not because of the County's own claim to the land or an assertion of a park, but because of Hofheinz's erroneous assertion that HSA owned the strip of land.

That the County acted to benefit solely private interests does not necessarily demonstrate a substantive due process violation. For substantive due process purposes, "the true purpose of the [policy], (i.e., the actual purpose that may have motivated its proponents, assuming this can be known) is irrelevant for rational basis analysis." FM Prop., 93 F.3d at 174. However, the County failed to put forth any alternative rational basis for the continued interference with private property rights.[19] Certainly in 1994, twenty years after the County had ceded control over Fannin Street to the City of

_____

[19] We note that a second letter from Richard Doss to El Franco Lee on November 14, 1985, provides a mixed private/public reason for the denial of access, and comes the closest to proving a legitimate reason for the denial of access. In that letter, Doss discusses the fence that abuts the Simi Property: "The fence was erected to minimize interruption to traffic on Fannin en route to the stadium and to prevent business competition with the stadium." While the latter purpose is clearly illegitimate (benefitting purely private interests), the former could offer the requisite "rational" justification for impeding access. The flaw, however, is that this letter only addresses the fence abutting the Simi Property, and makes no mention of an intervening county park. As all parties have conceded that the County once owned the eastern property up to the Simi property line, this letter does little to demonstrate that a park existed and, in fact, seems to support Simi's theory that the right-of-way has always abutted its property. The question we cannot answer is what legitimate interest the County had in maintaining that fence more than a decade after it had ceded control of the Fannin Street right-of-way to the City of Houston.

Houston, there was no rational basis for blocking access to the street. Once jurisdiction shifted to the City, whatever interests in maintaining traffic control or other governmental responsibilities that could be hypothesized to justify interference with access to Fannin Street disappear. Without a park and without a rational basis for impeding access, the County's arguments fail to survive even a rational basis review.

We, therefore, affirm the district court's findings that the County acted arbitrarily and without a legitimate governmental purpose. We hold that the invention of a park solely to deny private property holders lawful access to an abutting street is an abuse of governmental power, which on this peculiar factual foundation rises to the level of a substantive due process violation. Having successfully pled a deprivation of a constitutional right under § 1983, Simi is entitled to the relief granted by the district court.

## V. ATTORNEYS' FEES

It is undisputed that attorneys' fees are provided under 42 U.S.C. § 1988 for litigants who successfully bring § 1983 claims. See 42 U.S.C. § 1988 ("[T]he court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."). "We review a district court's award of attorneys' fees for abuse of discretion, and its factual findings relating

32

to the award of attorneys' fees for clear error." <u>Freiler v.</u>
<u>Tangipahoa Parish Bd. of Educ.</u>, 185 F.3d 337, 348 (5th Cir.
1999).  Having found that Simi has proven a successful § 1983
claim predicated on substantive due process, we agree that Simi
is entitled to receive attorneys' fees.[20]

However, we find that the district court abused its
discretion in awarding attorneys' fees based on legal work not
provided in furtherance of Simi's § 1983 claim.  While the record
does not permit us to determine precisely what factors were
controlling in the court's determination of the fee, our reading
of the record leads us to be concerned that Simi's state court
legal fees which preceded its amended § 1983 suit[21] were included
in the calculation.

This court has held that attorneys' fees resulting from
state court litigation that does not seek to enforce federal
constitutional rights, but which does precede a successful § 1983
suit, are not attorneys' fees contemplated by § 1988.  <u>See</u>
<u>Brantley v. Surles</u>, 804 F.2d 321, 325 (5th Cir. 1986).  This
conclusion necessarily follows from the purpose of § 1988, which
is to enforce § 1983 or other federal civil rights statutes.  Of

---

[20]  It is apparent from the record that, in considering the
award, the district court explained its reasons for the award and
complied with the requirements of <u>Johnson v. Georgia Highway</u>
<u>Express</u>, 488 F.2d 714, 717-19 (1974).  Our sole concern is the
timetable used to judge the attorneys' fees.

[21]  As stated, Simi's § 1983 claim was first raised in its
November 18, 1996, first amended complaint.

course, where a state proceeding is a necessary preliminary action to the enforcement of a federal claim, these attorneys' fees may be available in some circumstances, subject to the discretion of the district court.  See Redd v. Lambert, 674 F.2d 1032, 1037 (5th Cir. 1982); see also Barrow v. Falck, 977 F.2d 1100, 1104 (7th Cir. 1992) ("Section 1988 permits a court to shift to defendant only those legal fees incurred in proceedings to enforce a few listed federal statutes.  When proceedings in state courts or agencies are part of the enforcement of § 1983, then time reasonably devoted to them is compensable." (citing New York Gaslight Club, Inc. v. Carey, 447 U.S. 54, 71 (1980))).

Simi brought its initial suit in state court and did not allege a § 1983 violation.  Without a demonstration that this state suit was part of the enforcement of the § 1983 claim, legal fees relating to that litigation cannot be recovered under § 1988.  Following Brantley, we find that the state suit was not a part of the enforcement of § 1983, and therefore, attorneys' fees relating to the state action are not recoverable.  See Brantley, 804 F.2d at 325.

We are also concerned that the district court may have based its award on a record that includes billing reports of Simi's counsel dating back to 1990, well before the state and federal lawsuits were initiated.  These records, and the district judge's assertion at the hearing on attorneys' fees that counsel had worked on the case for six years, compels us to find that the

34

district court may have awarded an incorrect amount of attorneys' fees. Further, the district court apparently calculated the attorneys' fees with interest based on a time frame that may have included the state court proceedings. Because we find that the district court abused its discretion in considering attorneys' fees not related to the § 1983 action, we vacate the original award and remand it for reconsideration.

Having prevailed on appeal, Simi is entitled to legal fees for the appeal. On remand, we also ask the district court to decide on a reasonable fee.[22]

## VI. CONCLUSION

For the above stated reasons, we AFFIRM the judgment of the district court in all respects, except for the award of

---

[22] We find no merit in the County's argument that the district court exceeded its authority in awarding expert witness fees. We review awards of expert fees under an abuse of discretion standard. See Holmes v. Cessna Aircraft Co., 11 F.3d 63, 64 (5th Cir. 1994). The district court found in its Supplemental Findings that "the county persisted in defending its wrongful interference claim in bad faith; long after title questions had been clearly answered from the county's own records, it used this litigation to vex and oppress Simi." Under Alyeska Pipeline Service Co. v. Wilderness Society, courts may award expert fees in excess of the statutory limitations when "the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" 421 U.S. 240, 258-59 (1975); see also United States ex rel Wallace v. Flintco Inc., 143 F.3d 955, 972 n.14 (5th Cir. 1998). The district court found that the County acted vexatiously and oppressively, and from the record, we cannot conclude that such a finding was an abuse of discretion. We therefore affirm the award of expert fees.

attorneys' fees, which we VACATE and REMAND for further consideration consistent with this opinion.