Revised May 4, 2001

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 99-21033

---

CONROE CREOSOTING COMPANY; CONROE CREDIT CORPORATION; H.M. HAWTHORNE; LYN HAWTHORNE,

                                        Plaintiffs-Appellees,

versus

MONTGOMERY COUNTY TEXAS; ET AL,

                                        Defendants,

J.R. MOORE, Tax Assessor and Collector
     of Montgomery County, Texas,

                                        Defendant-Appellant.

---

Appeal from the United States District Court
for the Southern District of Texas

---

April 18, 2001

Before KING, Chief Judge, and HIGGINBOTHAM and DUHÉ, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

We are asked to decide an official's plea of qualified immunity to a damages claim for assorted violations of due process—the substantive variety. J.R. Moore appeals the district court's denial of his motion for summary judgment on a substantive

due process claim. The claim of qualified immunity presents issues of fact, and we dismiss for lack of jurisdiction.

I

This case arises out of a tax levy against Conroe Creosoting Company. Conroe Creosoting conducted business on a 155-acre facility in Montgomery County, Texas. The company's facility included a creosoting plant, administrative offices, an outlet store, and the corporate offices of a separate company, Conroe Credit Corporation. On June 19, 1996, Montgomery County and Conroe Independent School District obtained a final tax judgment against Conroe Creosoting in the respective amounts of $16,274.97 and $58,209.11, a total of $74,448.08. The judgment contained a finding that the personal property of Conroe Creosoting possessed a "fair market value" of $803,670.00.

On March 13, 1997, the court issued a writ of execution on behalf of the County and school district. J.R. Moore, the Tax Assessor and Collector for the County, promptly sent Charles Podeyn, a representative from his office, to take possession of the entire facility. Kay Applewhite and other members of the law firm of Heard, Goggan, Blair & Williams, the County's lawyers in this collection effort, accompanied Podeyn. Deputy constables from the County also participated in the seizure of the facility. Applewhite demanded that company operations cease and that all employees leave with their belongings within one hour. The entire

facility—including all real estate and personal property, as well as the offices of Conroe Credit Corporation—was seized and held for almost sixty days. Conroe Credit Corporation was not included in the scope of the tax judgment. During this period, H.M. Hawthorne and Lyn Hawthorne, who were principals of Conroe Creosoting, were repeatedly prevented from entering the property or conducting business. Conroe Creosoting did not seek relief in state or federal court at this time.

The law firm of Heard, Goggan entered into a contract with a group of auctioneers on behalf of the County. Louise Starks, a paralegal employed by the law firm, stated in her deposition that Moore authorized the contract, which called for a "complete dispersal" of the assets of Conroe Creosoting.

Pursuant to Rule 637 of the Texas Rules of Civil Procedure, the Hawthornes designated an "order of sale."[1] They designated certain vehicles and other nonessential plant equipment for sale in satisfaction of the approximately $75,000 tax judgment. Conroe Creosoting contends that, because Moore authorized a "complete dispersal" of the company's assets, the persons conducting the execution ignored the Hawthornes' designation of assets. Instead, the auctioneers kept the vehicles on display to increase public interest in the auction. These vehicles ultimately were never sold.

---

[1] *See* Tex. Rules Civ. Proc. 637 (2000) ("The officer shall first call upon the defendant . . . to point out property to be levied upon, and the levy shall first be made upon the property designated by the defendant.").

Conroe Creosoting argues that important plant machinery and other items critical to the functioning of the company were sold instead.

Moreover, in preparation for the auction of the company's assets, $69,000 in security costs were incurred. The execution sale ultimately realized $361,909.85 in proceeds, of which $241,251.49 was paid to various taxing authorities with judgments, delinquent taxes due other taxing authorities, and to Heard, Goggan for attorney's fees and expenses. Conroe Creosoting was given the net excess proceeds of $120,658.36. After the March 1997 seizure, Conroe Creosoting never reopened for business.

Moore says that he acted under the mistaken impression that a tax warrant—and not a writ of execution—authorized the County to organize the seizure and sale of the company's assets. He asserts that he learned of his mistake the day after the sale and immediately withdrew from further participation. Under Texas law, a tax warrant empowers both a peace officer and the tax collector/assessor to seize and dispose of a debtor's property.[2] Texas law relating to the execution of judgments only grants peace officers the authority to enforce writs of execution.[3]

Appellees contest Moore's assertion, arguing that he remained involved long after he learned that his office had no authority to proceed. They argue that Moore approved the auction contract

---

[2] *See* Tex. Tax Code Ann. § 33.23 (West 2000).

[3] *See* Tex. R. Civ. P. 622, 630, 637 (West 2000).

sometime after Stark's meeting with the auctioneers on March 20, 1997. Moore also signed an affidavit on May 7, 1997 supporting a tax warrant in which he asserted that the personalty, which at that time had already been seized by the constables, was in danger of being removed from the County by the plaintiffs.[4] Appellees also contend that Moore represented to the Office of the State Comptroller that there would be surplus properties after the sale from which a state sales tax claim could be satisfied, resulting in a Notice of Freeze against Conroe Creosoting. Appellees argue that Moore took the preceding actions after he learned about the writ of execution and prior to his withdrawal from the execution.

Conroe Creosoting, Conroe Credit Corporation, H.M. Hawthorne, and Lyn Hawthorne filed this section 1983 suit against Moore, the County, the constables involved in the seizure, Applewhite, and the firm of Heard, Goggan. The suit claims violations of substantive due process, procedural due process, and the Texas Constitution. Moore moved for summary judgment, asserting qualified immunity. The district court, following a magistrate judge's recommendations, granted the motion as to all claims except for the claim resting on substantive due process. The court also dismissed all claims of H.M. Hawthorne and Conroe Credit Corporation, as there was no evidence linking Moore's actions to their property. Moore appeals

---

[4] This tax warrant apparently was for additional delinquent taxes which had accrued following issuance of the writ of execution.

the court's refusal to grant him qualified immunity on the substantive due process claim.

## II

This Court employs a three-part inquiry in assessing a claim of qualified immunity. First, we examine whether the plaintiff has alleged the violation of a constitutional right. Second, we determine whether the constitutional right was clearly established at the time the defendant acted. A constitutional right is "clearly established" if "the unlawfulness of the conduct would be apparent to a reasonably competent official."[5] The second prong of the qualified immunity inquiry therefore requires an assessment of whether the official's conduct would have been objectively reasonable at the time of the incident.[6] Finally, we determine whether the record indicates that the violation occurred, or gives rise to a genuine issue of material fact as to whether the defendant actually engaged in the conduct that violated the clearly established right.[7] As this case comes to us from the denial of a summary judgment motion, the facts which inform our analysis must be construed in favor of the nonmovants.[8]

---

[5] *Morris v. Dearborne*, 181 F.3d 657, 665-66 (5th Cir. 1999).

[6] *See Shipp v. McMahon*, 234 F.3d 907, 911-12 (5th Cir. 2000).

[7] *See Morris*, 181 F.3d at 666.

[8] *See Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 482 (5th Cir. 2000).

Turning to the first phase of the qualified immunity inquiry, we address Conroe Creosoting's assertion that Moore's actions violated its right to substantive due process.[9] The Supreme Court has noted that, "historically, this guarantee of due process has been applied to deliberate decisions of government officials to deprive a person of life, liberty, or property."[10] The overarching objective of this doctrine is to prevent government officials from "abusing [their] power, or employing it as an instrument of oppression."[11] Courts generally examine due process challenges to executive action by asking "whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."[12] Recognizing that the Supreme Court has "always been reluctant to expand the

---

[9] Conroe Creosoting's claims might also be viewed through a more "explicit textual source of constitutional protection," *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998), such as the Takings Clause or the Fourth Amendment. *See John Corp. v. City of Houston*, 214 F.3d 573, 578-79 (5th Cir. 2000). We need not address this possibility, however, as neither side discusses the relevance of these alternative textual sources.

[10] *Daniels v. Williams*, 474 U.S. 327, 331 (1986) (emphasis omitted).

[11] *Lewis*, 523 U.S. at 846.

[12] *Id.* at 847 n.8.

concept of substantive due process,"[13] we apply the doctrine with the "utmost care."[14]

To prevail on a substantive due process claim, Conroe Creosoting must first establish the existence of a property interest protected by the Fourteenth Amendment. Texas law defines the relevant property interest.[15] Conroe Creosoting's claims appear to rest on its right to designate property for sale under Rule 637 of the Texas Rules of Civil Procedure. Conroe Creosoting relies on Moore's authorization of the "complete dispersal" of its assets, an act which allegedly nullified the company's right to designate assets of its choosing. Although Rule 637 has a substantive effect, it implies only a procedural right. It is axiomatic that a procedural right can not, in and of itself, give rise to a property interest. To the extent that Conroe Creosoting relies on Rule 637, the company does not state a substantive due process claim.

If we consider Conroe Creosoting's arguments in light of the broader array of property rights to which the company is entitled,

---

[13] *Id.* at 842.

[14] *Simi Inv. Co. v. Harris County*, 236 F.3d 240, 249 (5th Cir. 2000).

[15] *See Simi*, 236 F.3d at 249-50; *see also Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1046 (5th Cir. 1998) ("Under this analysis, the hallmark of property . . . is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'").

a substantive due process claim is stated.[16] Texas recognizes a corporation's right to acquire and own realty and personalty.[17] Where a state official deprives a corporation of its property in a manner that "shocks the conscience," substantive due process may be violated.[18]

The right to be free from this kind of oppressive executive conduct was also clearly established at the time of the events in question.[19] Conroe Creosoting asserts that Moore's conduct "shocks the conscience" for the following reasons: (1) he selected the

---

[16] At oral argument, counsel for Conroe Creosoting argued that it ultimately relies on a more generalized right to private property, and not on Rule 637. While Conroe Creosoting's briefs seem contrary to this characterization, the ambiguity of the briefs on this point preclude a finding of waiver.

[17] *See Berry v. Humble Oil & Ref. Co.*, 205 S.W.2d 376, 388 (Tex. Civ. App. 1947).

[18] *See Brown v. Nationsbank Corp.*, 188 F.3d 579, 590-92 (5th Cir. 1999) (finding that plaintiffs stated a *Bivens* claim for federal agents' violation of their substantive due process rights, which resulted in financial and other intangible, non-physical injury); *see also Regents of the Univ. of Michigan v. Ewing*, 474 U.S. 214, 223 (1985) (assuming without deciding that the deprivation of a property interest violated substantive due process); *Simi*, 236 F.3d at 253-54 (finding that a county land-use decision, which arbitrarily infringed on private property interests, violated substantive due process). *Cf. Mahone v. Addicks Util. Dist.*, 836 F.2d 921, 929 (5th Cir. 1988) (noting that, at a minimum, "property interest" as defined in the Fourteenth Amendment includes both real and personal property).

[19] *See Shipp v. McMahon*, 234 F.3d 907, 915 (5th Cir. 2000) ("To show that a right is clearly established, the plaintiff does not have to refer to precedent that is directly on point, or that declares that the conduct in question is unlawful. Rather, the right is clearly established if based on pre-existing law, the unlawfulness of the conduct in question is apparent.").

auctioneers, who were allegedly his friends; (2) he notified state authorities of the sale; (3) he signed a false affidavit in support of a tax warrant; and (4) he authorized the "complete dispersal" of the company's assets without legal authority. If a jury found that this conduct occurred in the manner asserted by Conroe Creosoting, these actions, taken together, would be unlawful in light of then-existing substantive due process law.

We are persuaded that there are genuine issues of fact regarding Moore's role in this unfortunate affair. These questions deprive us of jurisdiction, and we must dismiss Moore's appeal.[20] Specifically, we are troubled by the circumstances of Moore's signing an order authorizing a dispersal sale and the summary seizure and closing of the business. Whether Moore was simply a county official acting on the advice of the County's legal counsel when he signed the dispersal order, as he would have it, can not be determined as a matter of law from this record. A trier of fact might conclude that he knew the effect of the dispersal order and dispatched the lawyers and County employees to take possession of the property—to close the business. A trier of fact might also find that he later signed a false affidavit asserting that the seized property was not secure.

There is a point at which an official's conduct constitutes a clear violation of substantive due process. This is so despite our

_____

[20] *See Johnson v. Jones*, 515 U.S. 304 (1995).

10

insistence that it has a narrow compass and is not easily found. Even if, as some maintain, it is oxymoronic and without textual support in the Constitution, the doctrine does exist. The Supreme Court said so, and that ends the matter for this inferior court.

III

In light of the preceding, we dismiss the appeal for want of jurisdiction.

Appeal DISMISSED.