## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-11109

United States Court of Appeals
Fifth Circuit

**FILED**

September 27, 2016

Lyle W. Cayce
Clerk

HACKBELT 27 PARTNERS, L.P.,

     Plaintiff - Appellant

v.

CITY OF COPPELL,

     Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:14-CV-2258

Before JONES, DENNIS, and PRADO, Circuit Judges.

PER CURIAM:[*]

Hackbelt 27 Partners, L.P. appeals from an order granting summary judgment in favor of the City of Coppell. Hackbelt requested a zoning change, which the City ultimately denied. Hackbelt sued, claiming the denial of its application amounted to a regulatory taking and violated its rights to substantive due process and equal protection. The district court disagreed and

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

granted summary judgment for the City on all claims. Upon review, we conclude that the district court properly granted summary judgment in favor of the City and AFFIRM its decision.

**I**

Hackbelt owns 20.74 acres of undeveloped land in the city of Coppell, Texas, that is zoned for agricultural use. In 2011, the City adopted the 2030 Comprehensive Master Plan. The Master Plan provided "a basis for considering and evaluating land use decisions and planning for future development and redevelopment projects." Under the Master Plan, the City's strategy "focused on creating new mixed-use neighborhoods and community activity centers." Mixed-use referred to developments that included multiple land uses, such as residential, retail, and office uses. The Master Plan designated Hackbelt's property as a "Mixed-Use Community Center," but this designation did not change the property's existing zoning for agriculture.

In 2012, Hackbelt entered into contracts to sell a portion of its property to developers to develop a mixed-use project. Hackbelt then filed an application with the City to change its property's zoning designation from agricultural to a "Planned Development district for mixed-use." Hackbelt's application proposed a development divided into three lots. Lot 1 was designated as a hotel space, Lot 2 was designated for residential dwellings, and Lot 3 was designated for commercial uses, such as restaurants and offices. The City's Planning and Zoning Commission denied Hackbelt's zoning request. Hackbelt appealed the decision to the City Council, which remanded the application to the planning and zoning commission after giving comments to Hackbelt. The City Council was concerned, inter alia, that the development looked like three separate projects rather than an integrated mixed-use development; that the project was not sufficiently accessible to pedestrians; that the development did not have adequate parking to accommodate its

residents and visitors; and that, as drafted, the separate projects could be split up and might not all be completed, leaving the City with multifamily housing unconnected to the retail, office, and hotel uses the City Council envisioned for a dynamic mixed-use development.  City Council members noted that they were looking for a more holistic design for a mixed-use development, incorporating the retail and commercial uses within the residential units.

Hackbelt modified its development plan and filed an amended zoning application with the Planning and Zoning Commission, but the commission denied this application.  Hackbelt then appealed to the City Council, which also denied the amended application.  The City Council members stated that Hackbelt's development still failed to sufficiently integrate the different proposed uses and noted that the City was seeking a more cohesive mixed-use development, especially for a location seen as an "entryway" to the city.

Because the City denied Hackbelt's zoning request, Hackbelt had to terminate the contracts it had made with developers, resulting in $235,000 in termination fees.  Hackbelt filed suit in state court, claiming the City's denial of its application violated its state and federal rights to substantive due process and equal protection and constituted a regulatory taking under the state constitution.  The City removed the action to federal court, where the district court granted summary judgment for the City on all claims.  Hackbelt timely appealed.

**II**

Summary judgment is appropriate if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  We review the district court's grant of summary judgment de novo, applying the same standards as the district court, and view facts and inferences in the light most favorable to the

3

nonmoving party. *Lindquist v. City of Pasadena,* 669 F.3d 225, 232-33 (5th Cir. 2012).

## A. Substantive Due Process Claims

Hackbelt asserts that the City violated its substantive due process rights under the United States Constitution and its due course of law rights under the Texas Constitution by arbitrarily denying its request for rezoning.[1] Where a party alleges that a municipal land-use decision violates its substantive due process rights, we analyze that decision under the rational basis test. *Simi Inv. Co. v. Harris Cty.*, 236 F.3d 240, 249 (5th Cir. 2000). In order to prevail under the rational basis test, Hackbelt must show that the City's denial of its zoning application (1) deprived it of a constitutionally protected right and (2) was not "rationally related to a legitimate government interest." *Id.* Assuming without deciding that Hackbelt has shown deprivation of a constitutionally protected right, Hackbelt fails to establish a dispute of material fact regarding whether the City's actions were related to its legitimate interest in promoting the welfare of the City.

Whether a rational relationship to a legitimate government interest exists is a question of law that we review de novo. *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1044 (5th Cir. 1998). In reviewing the City's decision,

---

[1] We have previously stated that "[t]he protections afforded by the Texas Constitution's Due Course of Law Clause and the United States Constitution's Due Process Clause are generally the same." *Lindquist*, 669 F.3d at 238 (citing *Tex. Worker's Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 658 (Tex. 2004)). Prior to oral argument, we asked the parties to be prepared to address whether the Texas Supreme Court's decision in *Patel v. Texas Department of Licensing and Regulation*, 469 S.W.3d 69 (Tex. 2015), governed Hackbelt's Due Course of Law Clause challenge under the Texas Constitution. Nevertheless, in its briefs on appeal, Hackbelt focused solely upon the applicable framework under the federal Constitution and made no argument that the framework applicable to its state claim was different in any way. Hackbelt has therefore forfeited any argument in this regard. *See Yohey v. Collins*, 985 F.2d 222, 224 (5th Cir. 1993) (arguments not briefed are forfeited). Accordingly, we apply only the federal framework and need not decide whether the state constitution provides for a different test.

we ask "only whether a rational relationship exists between the [denial] and a conceivable legitimate objective. If the question is at least debatable, there is no substantive due process violation." *Simi Inv.*, 236 F.3d at 251 (citation omitted). "We have long insisted that review of municipal zoning is within the domain of the states, the business of their own legislatures, agencies, and judiciaries, and should seldom be the concern of federal courts."[2] *Shelton v. City of College Station*, 780 F.2d 475, 477 (5th Cir. 1986) (en banc). Accordingly, we will only declare such government action unconstitutional if it is "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *FM Props. Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996) (quoting *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926)).

Hackbelt argues that issues of material fact remain regarding whether the City's denial is rationally related to general welfare.[3] In response, the City notes that City Council members expressed concern that Hackbelt's proposal lacked the cohesive and integrated quality possessed by other mixed-use developments. The City also notes that Council members did not see Hackbelt's proposed development as the best use for the property and believed

---

[2] Hackbelt cites to the Administrative Procedure Act (APA) and its standards governing review of agency decisions in attempting to persuade us that the City acted arbitrarily. However, we review municipal zoning decisions such as this one as quasi-legislative rather than administrative in nature. *See Shelton v. City of College Station,* 780 F.2d 475, 482-83 (5th Cir. 1986) (en banc). Such decisions must be sustained "if a court is able to hypothesize a legitimate purpose to support" them. *Mahone v. Addicks Util. Dist. of Harris Cty.*, 836 F.2d 921, 934 (5th Cir. 1988).

[3] Hackbelt also contends that the City used unadopted zoning ordinances in its evaluation of Hackbelt's application and argues that the City therefore violated state law, apparently suggesting that this alleged state law violation supports a conclusion that the City's decision was arbitrary and capricious. Hackbelt further attempts to argue that the City's decision was motivated by racial animus. However, because Hackbelt failed to raise these argument before the district court, it may not raise them on appeal. *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 884 n.25 (5th Cir. 1988) (en banc).

that the proposed hotel was not ideal.

While Hackbelt characterizes these rationales as arbitrary and unpredictable, they are sufficiently related to the City's interest in promoting the general welfare to sustain the City's action. *See FM Props.,* 93 F.3d at 173-74. "The concept of the public welfare is broad and inclusive. . . . The values it represents are spiritual as well as physical, aesthetic as well as monetary." *FM Props.*, 93 F.3d at 175 n.9 (ellipses in original) (quoting *Vill. of Belle Terre v. Boraas*, 416 U.S. 1, 6 (1974)). Requiring a more cohesive mixed-use development that offers a more desirable hotel is reasonably related to promoting the general welfare of the City community. *See id.* at 174-75; *Shelton,* 780 F.2d at 479-80, 482-83. Accordingly, we affirm the district court's grant of summary judgment for the City on Hackbelt's federal substantive due process and state due course of law claims.

## B. Equal Protection Claims

Hackbelt also argues that the district court erred in granting summary judgment on its equal protection claims asserted under the state and federal constitutions. During the same meeting at which the City Council denied Hackbelt's request, the City Council approved a zoning request for The Avenue at Denton Tap. The Avenue sought to rezone its property from commercial to a mixed-use planned development. Hackbelt contends that its zoning application was similarly situated to The Avenue's mixed-use zoning application and that there was no rational basis for denying Hackbelt's application while approving The Avenue's application during the same City Council meeting.

To show an equal protection violation in its "class of one" claim, Hackbelt must prove that (1) it "has been intentionally treated differently from others similarly situated" and (2) "there is no rational basis for the difference in

treatment."[4] *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). "[T]here is no precise formula to determine whether an individual is similarly situated to comparators." *Lindquist*, 669 F.3d at 233 (quoting *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004)). Rather, this court "consider[s] the full variety of factors that an objectively reasonable . . . decisionmaker would have found relevant in making the challenged decision." *Id.* at 234 (citation and internal quotation marks omitted).

Here, the district court rightly concluded that Hackbelt's equal protection claims fail under the first prong because Hackbelt and The Avenue were not similarly situated. Hackbelt's property and zoning application were different from The Avenue's in a number of material respects. First, The Avenue's property was ten times smaller than Hackbelt's, and its zoning application did not include a request to build a hotel. As the district court pointed out, given the smaller size of The Avenue's plan, the various uses (i.e., residential and retail) were "very close together." The stark differences in size and proposed use make plain that Hackbelt and The Avenue were not similarly situated. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 939 (Tex. 1998) ("A landowner seeking a zoning change for a 1200 acre development is not similarly situated to a landowner seeking to build on a small parcel of land.").

Moreover, the land on which The Avenue resides was classified by the City's Master Plan as a "Mixed-Use Neighborhood Center," whereas Hackbelt's property was classified as a "Mixed-Use Community Center." These classifications indicated that Hackbelt's property was to function as a "regional destination" and to serve an entire community while The Avenue's

---

[4] We need not separately address Hackbelt's claim under the Texas Constitution because "the federal analytical approach applies to equal protection challenges under the Texas Constitution." *Lindquist*, 669 F.3d at 233 (quoting *Bell v. Low Income Women of Tex.*, 95 S.W.3d 253, 266 (Tex. 2002)).

development was not designated to serve such purposes. Accordingly, Hackbelt has not established a genuine dispute regarding whether The Avenue was similarly situated, and the district court therefore properly granted summary judgment on Hackbelt's equal protection claims.

## C. Regulatory Takings Claim

Hackbelt contends that material fact disputes remain regarding whether the City's zoning decision constituted a regulatory taking under the Texas Constitution. The Supreme Court of Texas has articulated two relevant standards—originally derived from federal law—to determine whether a regulatory taking has occurred. First, "the application of a general zoning law to a particular property constitutes a regulatory taking if the ordinance 'does not substantially advance legitimate state interests.'" *Mayhew*, 964 S.W.2d at 933 (quoting *Agins v. City of Tiburon*, 447 U.S. 255, 260 (1980)). Second, a regulatory taking occurs where the property regulation "unreasonably interfere[s] with landowners' rights to use and enjoy their property." *Id.* at 935. We discuss each of these standards in turn.

1. The "Substantially Advances" Standard

As a threshold matter, the district court correctly observed that Texas law is unsettled as to whether the "substantially advances" standard is still viable. When initially adopting this standard, the Supreme Court of Texas in *Mayhew* relied exclusively on U.S. Supreme Court regulatory takings decisions. *See* 964 S.W.2d at 933. However, after *Mayhew* was decided, the U.S. Supreme Court unanimously repudiated the "substantially advances" standard. *See Lingle v. Chevron USA Inc.*, 544 U.S. 528, 548 (2005) ("We hold that the 'substantially advances' formula is not a valid takings test, and indeed conclude that it has no proper place in our takings jurisprudence."). It is unclear whether the "substantially advances" standard remains cognizable

8

under Texas law post-*Lingle*.[5] We need not decide whether the state supreme court is likely to apply this standard, however, as we conclude that Hackbelt's claim would fail even under such analysis.

In deciding whether a governmental decision "substantially advances" a legitimate state interest, Texas courts have looked to whether the government's legitimate interests were furthered by its action. *See Mayhew*, 964 S.W.2d at 935 (denying a development plan "further[ed]" the city's interests in preserving the rate and character of community growth); *see also* Sheffield, 140 S.W.3d at 675-77. Here, Hackbelt failed to raise a dispute of material fact regarding whether the City's zoning decisions substantially advance a legitimate state interest under the *Mayhew* standard.

Promoting the general welfare of the community is a legitimate government interest. *See Mayhew*, 964 S.W.2d at 935. In this case, the City denied Hackbelt's application, inter alia, because it was not sufficiently cohesive and was not what the City had in mind for a mixed-use development that would create an attractive entryway to the city. As previously discussed, these reasons are sufficient to show that the City was promoting the general welfare of the community by denying Hackbelt's application. *See Mayhew,* 964 S.W.2d at 935-36 (concluding that a town acted to further a legitimate state interest where it denied a development application "because of the impact the

---

[5] On one hand, the Supreme Court of Texas has made clear that it "look[s] to federal takings cases for guidance in applying [its] own constitution," *Sheffield Dev. Co., Inc. v. City of Glenn Heights*, 140 S.W.3d 660, 674 (Tex. 2004), and, in its recent decision in *City of Lorena v. BMTP Holdings, L.P.*, the state high court did not apply the "substantially advances" standard to a takings claim, 409 S.W.3d 634, 644-45 (Tex. 2013). On the other hand, the Texas Supreme Court has not explicitly rejected the "substantially advances" standard, and it has stated, pre-*Lingle*: "apart from what the [U.S.] Supreme Court has said, we continue to believe for purposes of state constitutional law . . . that [the "substantially advances" standard] is an appropriate test for a constitutionally compensable taking, at least in some situations." *Sheffield Dev. Co. v. City of Glenn Heights*, 140 S.W.3d 660, 674 (Tex. 2004).

development would have on the overall character of the community and the unique character and lifestyle of the [t]own"). Hackbelt's sole argument in this regard is that a material fact dispute exists because, it contends, the City failed to follow its Master Plan. Hackbelt concedes, however, that "[t]he law does not require the City to approve any zoning change application it receives even if that application meets all of the requirements of the [Master] Plan." Accordingly, Hackbelt has not established a material fact dispute as to whether the City's decision substantially advanced a legitimate government interest.

2. The "Unreasonably Interferes" Standard

In determining whether an unreasonable interference has occurred, Texas courts follow the U.S. Supreme Court's "*Penn Central* inquiry, which requires [a court] to consider all of the circumstances surrounding the alleged taking." *City of Lorena v. BMTP Holdings, L.P.*, 409 S.W.3d 634, 644 (Tex. 2013) (citing *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978)). Under *Penn Central*, "three key factors" guide the analysis: "(1) the economic impact on the claimant; (2) the extent of interference with the claimant's investment-backed expectations; and (3) the character of the government's action." *BMPT Holdings*, 409 S.W.3d at 644 (citing *Penn Cent.*, 438 U.S. at 124-25).

Here, all three factors weigh in favor of the City. First, to determine the economic impact, we "compare[] the value that has been taken from the property with the value that remains in the property." *Mayhew*, 964 S.W.2d at 936. Here, Hackbelt's property is still zoned and may be used for agriculture. Hackbelt has not argued that the denial of its application has taken any value from the property for agricultural purposes. Hackbelt responds that its property has suffered an adverse economic impact insofar as it cannot utilize the property as designated under the Master Plan. But the

classification as a Mixed-Use Community Center was nothing more than a potential future use; nothing in the Master Plan guaranteed it would be rezoned accordingly. When analyzing the economic impact of a regulation, the "loss of anticipated gains or potential future profits" is typically not considered. *See id.* (citing *Andrus v. Allard*, 444 U.S. 51, 66 (1979)).

Second, the City's decision does not interfere with Hackbelt's investment-backed expectations. Not every investment-backed expectation can form the basis for a regulatory takings claim; instead, a claimant must establish interference with a "*reasonable* investment-backed expectation." *Id.* at 937 (emphasis added). Thus, "[k]nowledge of existing zoning is to be considered in determining whether the regulation interferes with investment-backed expectations." *Id.* Hackbelt claims the City's denial of its application has caused it to lose its development contracts, resulting in substantial financial loses. But Hackbelt had no reasonable expectation to build a mixed-use development on its property when the property had been zoned for agricultural use only. *See id.* at 937-38 (no reasonable investment-backed expectation "to build 3,600 units on [claimant's] 1,200 acres when the Town's zoning ordinances had for twelve years limited development to one unit per acre.").

Third, Hackbelt has made no attempt to explain how the "character of the [City's] action" could weigh in favor of finding a regulatory taking. Regardless, this factor weighs against Hackbelt. "[G]overnment actions that may be characterized as acquisitions of resources to permit or facilitate uniquely public functions have often been held to constitute 'takings.'" *Penn Cent.,* 483 U.S. at 128. Here, the City did not acquire Hackbelt's property or impose any new regulation that further restricted Hackbelt's existing use. Rather, the City merely denied Hackbelt's request to rezone its property.

11

Hackbelt remains free to submit another application, sell the property, or put it to use under its current zoning. In light of the above, Hackbelt has not established a material fact dispute regarding whether the City's denial of Hackbelt's zoning request unreasonably interfered with Hackbelt's right to use and enjoy its property.

## III

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment.