# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

May 22, 2018

No. 17-20373

Lyle W. Cayce
Clerk

RESIDENTS AGAINST FLOODING; ANITA GIEZENTANNER; VIRGINIA GREGORY; LOIS MYERS,

Plaintiffs - Appellants

v.

REINVESTMENT ZONE NUMBER SEVENTEEN, CITY OF HOUSTON, TEXAS; MEMORIAL CITY REDEVELOPMENT AUTHORITY, also known as TIRZ 17 Redevelopment Authority; CITY OF HOUSTON, TEXAS,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:16-CV-1458

Before KING, JONES, and GRAVES, Circuit Judges.

PER CURIAM:*

Plaintiffs–Appellants, a nonprofit called Residents Against Flooding and three individuals, sued Defendants–Appellees Reinvestment Zone Number Seventeen, Memorial City Redevelopment Authority, and the City of Houston for the implementation of some, and postponement of other, projects that allegedly caused flooding of plaintiffs' properties, seeking relief pursuant to

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-20373

42 U.S.C. § 1983 and the Texas Constitution. Defendants filed motions to dismiss, which the district court granted. We AFFIRM.

## I.

On July 21, 1999, the City Council of Houston adopted Ordinance 1999-759, which approved the creation of Reinvestment Zone Number Seventeen ("the Zone") pursuant to Chapter 311 of the Texas Tax Code. The Zone is a contiguous geographic area that comprises what is generally referred to as the Memorial City Area. In the ordinance, the City Council found that the Zone "substantially impairs and arrests the sound growth of the City, retards the provision of housing accommodations, constitutes an economic and social liability and is a menace to the public health, safety, morals, or welfare in its present condition and use." The ordinance also stated that "improvements" in this area "will significantly enhance the value of all the taxable real property in the proposed zone" and "be of general benefit to the City." The Zone is governed by a seven-member board of directors ("the Board"), which makes "recommendations to the City Council concerning the administration of the Zone."

Subsequent to the passage of the ordinance, the Board prepared and adopted a Project Plan and Reinvestment Zone Financing Plan (collectively, "the Plan") for the Zone, which was then submitted to the City Council for approval. The City Council approved it in Ordinance 1999-852 on August 11, 1999. It has since approved two amendments to the Plan. *See* Houston, Tex., Ordinance 2011-728 (Aug. 17, 2011); Houston, Tex., Ordinance 2014-1130 (Dec. 10, 2014). The Plan outlined potential improvements in the Zone, including road and street projects, as well as sewer and drainage projects. On August 14, 2002, the City Council approved the creation of the Memorial City Development Authority ("the Authority") in Ordinance 2002-26 pursuant to Subchapter D of Chapter 431 of the Texas Transportation Code. The Authority

No. 17-20373

is a local government corporation whose purpose is to aid in the implementation of the Plan and in the "development of residential, commercial and public properties in the Memorial City Area."

Residents Against Flooding ("RAF") is a nonprofit association whose mission is to advocate for flood relief. Its members reside and own property in and around the Memorial City Area. RAF, along with five individuals who live in neighborhoods adjacent to the Zone, sued the City of Houston, the Zone, and the Authority in May 2016 pursuant to 42 U.S.C. § 1983 and the Texas Constitution and amended their complaint in October 2016. The plaintiffs alleged that infrastructure and drainage projects in the Zone were conveying stormwater out of the Zone's commercial areas and into residential neighborhoods, causing these neighborhoods to flood during times of heavy rainfall in 2009, 2015, and 2016. They also alleged that projects whose purpose was to protect these neighborhoods, such as detention basins, were postponed. They claimed that these government actions violated substantive due process under the Fourteenth Amendment of the U.S. Constitution and substantive due course of law under Article I, § 19 of the Texas Constitution. They further claimed that the resulting flooding constituted an unreasonable seizure under the Fourth Amendment of the U.S. Constitution.

The plaintiffs sought a declaration that the defendants had violated their constitutional rights. They also sought an injunction of the defendants' unconstitutional actions and an order to remedy the defendants' inactions. The defendants filed motions to dismiss or, alternatively, for a more definite statement. The district court granted the motions to dismiss. RAF and three of the five original individually named plaintiffs appealed.

## II.

We review de novo a dismissal for failure to state a claim under Rule 12(b)(6). *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 520 (5th

No. 17-20373

Cir. 2016). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## A.

We first address the plaintiffs' substantive due process and substantive due course of law allegations and conclude that they have failed to state such claims. The plaintiffs alleged that the defendants' actions caused flooding of plaintiffs' homes, depriving them of their constitutionally protected right to use their homes. A due process violation under the Fourteenth Amendment of the U.S. Constitution has two elements: (1) the government's conduct implicates a constitutionally protected right and (2) this conduct is not rationally related to a legitimate governmental interest. *See, e.g., Simi Inv. Co. v. Harris County*, 236 F.3d 240, 249–51 (5th Cir. 2000). We have previously acknowledged that the standard governing a Texas due course of law claim is the same as that governing a Fourteenth Amendment due process claim. *See, e.g., Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 438 (5th Cir. 2008); *Arrington v. County of Dallas*, 970 F.2d 1441, 1447 (5th Cir. 1992).

### i.

In this case, the plaintiffs have not adequately pleaded that government conduct implicated a constitutionally protected right. The infrastructure and drainage projects in the Zone did not involve the plaintiffs' properties. Moreover, their claimed right to use their homes is too broad and unsupported

4

by caselaw. A protected property right must be "established through some independent source such as state law." *Simi Inv. Co.*, 236 F.3d at 250 (quoting *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1046 (5th Cir. 1998)). The plaintiffs cite cases in which the government's conduct implicated property rights that are inapplicable here. *Cf. Mikeska v. City of Galveston*, 451 F.3d 376, 379 (5th Cir. 2006) (deciding not to disturb the uncontested district court determination that the government's condemnation of the appellants' homes and disablement of several utilities implicated "a constitutionally protected right in their homes and in access to public utility services"); *Conroe Creosoting Co. v. Montgomery County*, 249 F.3d 337, 341 (5th Cir. 2001) ("Texas recognizes a corporation's right to acquire and own realty and personalty."); *Simi Inv. Co.*, 236 F.3d at 250 (stating that "an abutting property owner possesses an easement of access . . . which is a property right" under Texas law).

### ii.

Even assuming that the government projects implicated a constitutionally protected right, the plaintiffs have failed to state a substantive due process claim because these projects were at least debatably rationally related to a legitimate governmental interest. "Our review of [government] actions must be measured against the deferential 'rational basis' test that governs substantive due process." *Simi Inv. Co.*, 236 F.3d at 249. "The question is only whether a rational relationship exists between the [government action] and a conceivable legitimate objective. If the question is at least debatable, there is no substantive due process violation." *Id.* at 251 (quoting *FM Props. Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996)). "Substantive due process analysis is appropriate only in cases in which government arbitrarily abuses its power to deprive individuals of constitutionally protected rights." *Id.* at 249.

Here, the government objectives were to improve its tax base and the general welfare. As stated by the plaintiffs in the complaint, the government projects enhanced roads and drainage, though in commercial areas in which the plaintiffs did not desire these improvements. The plaintiffs have also acknowledged in the complaint that "[t]he tax base has increased far above projections." It is "at least debatable" that a rational relationship exists between the government projects and objectives. *Id.* at 251; *see also Hackbelt 27 Partners, L.P. v. City of Coppell*, 661 F. App'x 843, 847 (5th Cir. 2016) (per curiam) ("Requiring a more cohesive mixed-use development that offers a more desirable hotel is reasonably related to promoting the general welfare of the City community."); *Tex. Manufactured Hous. Ass'n, Inc. v. City of Nederland*, 101 F.3d 1095, 1106 (5th Cir. 1996) (concluding that it was "at least debatable" that the government's restriction on the placement of mobile homes was rationally related to "maintain[ing] property values"); *FM Props. Operating Co.*, 93 F.3d at 175 (concluding that it was "at least debatable" that the city policy was rationally related to the city's stated goal of "guarding against the hazards of substandard land development" and "thereby advancing the health, safety, and welfare of the City and its citizens"); *cf. Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 388 (5th Cir. 2001) (stating that the plaintiff had not alleged facts to support the conclusion that "the ordinance bears no real and substantial relation to its objectives").

This case is analogous to *York v. City of Cedartown*, 648 F.2d 231 (5th Cir. Unit B 1981) (per curiam).[1] In *York*, the plaintiffs argued that they had asserted a due process claim pursuant to § 1983. *Id.* at 232. They alleged that the government's actions with regard to infrastructure and drainage resulted

---

[1] "[A]ll Unit B cases are precedent in the Fifth Circuit." *United States v. Rojas-Martinez*, 968 F.2d 415, 420 n.11 (5th Cir. 1992).

in "water and sewage . . . deposited on [the] appellants' property" during times of "excessive rainfall," depriving them of their property rights. *Id.* We held that the appellants failed to allege facts that rose to the level of a violation of the U.S. Constitution. *See id.* As in *York*, the plaintiffs here have failed to state a federal due process claim. As the standards governing federal due process claims and Texas due course of law claims are the same, *see, e.g.*, *Gates*, 537 F.3d at 438, the plaintiffs have also failed to state a violation of the Texas Constitution.

## B.

The plaintiffs have also alleged that the defendants caused flooding of their properties that constituted an unreasonable seizure under the Fourth Amendment of the U.S. Constitution. We hold that they have not adequately pleaded a Fourth Amendment claim. The elements of such a claim are (1) "a meaningful interference with [plaintiffs'] possessory interests in [their] property" (i.e., a seizure), which is (2) "unreasonable because the interference is unjustified by state law or, if justified, then uncompensated." *Severance v. Patterson*, 566 F.3d 490, 502 (5th Cir. 2009). A seizure requires intentional action. *See Brower v. County of Inyo*, 489 U.S. 593, 596 (1989) ("Violation of the Fourth Amendment requires an *intentional* acquisition of physical control." (emphasis added)). A seizure does not follow from "unintended consequences of government action" or "accidental effects of otherwise lawful government conduct." *Id.*; *Laughlin v. Olszewski*, 102 F.3d 190, 193 (5th Cir. 1996) (concluding that there was no seizure when "any interference with [the plaintiff's] possessory interests in his property was a wholly unintentional consequence of [the officer's] otherwise lawful act"). Nor does it occur whenever there is a "governmentally caused" action or whenever there is a "governmentally caused and governmentally *desired*" action. *Brower*, 489 U.S. at 596–97. Interference with property constitutes a seizure only when the

interference is caused "through means intentionally applied" by the government. *Id.* at 597 (emphasis removed). "[T]he detention or taking [of property] itself must be willful." *Laughlin*, 102 F.3d at 193.

As stated in the plaintiffs' complaint, the flooding of their residential properties occurred during rainfall events in April 2009, May 2015, and April 2016. The plaintiffs claimed that the defendants knew of the risk of flooding in the Memorial City Area and the surrounding neighborhoods. They also alleged that several infrastructure and drainage projects in the Zone that the defendants engaged in moved stormwater out of commercial areas and into the residential neighborhoods.

The plaintiffs have failed to state a Fourth Amendment claim. There was no government "detention," "taking," or other "governmentally caused" action related to the plaintiffs' property. *Cf. Severance*, 566 F.3d at 502 (stating that the government appropriation of an easement over a private landowner's property and denial of compensation amounted to a Fourth Amendment violation). The infrastructure and drainage projects that were implemented were government conduct, but they did not directly involve the plaintiffs' properties.

Even if there were government action that resulted in interference with the plaintiffs' possessory interests in their homes, the level of intentionality and willfulness required for that action to constitute a seizure under the Fourth Amendment is not present. The desired outcome of these government projects was to improve the welfare of the Zone and, in turn, the City—albeit by, as the plaintiffs claim in their complaint, benefitting commercial areas. The alleged consequences of these projects—though perhaps negligent in light of knowledge of the risk of flooding—were not "willful." *See Laughlin*, 102 F.3d at 193; *cf. York*, 648 F.2d at 232 ("[A]ppellants have failed to allege facts suggesting an 'abuse of governmental power sufficient "to raise an ordinary

8

tort by a government agent to the stature of a violation of the Constitution."""" (quoting *Suthoff v. Yazoo Cty. Indus. Dev. Corp.*, 637 F.2d 337, 340 (5th Cir. Unit A 1981))). Thus, interference with the plaintiffs' properties, if any, was not caused by defendants "through means intentionally applied." *Brower*, 489 U.S. at 597 (emphasis removed).

## C.

We note that the district court dismissed the suit on multiple grounds. The parties addressed all of these grounds in their briefs. In light of our affirmance of the dismissal on the grounds above, we need not address the other grounds upon which the district court based its judgment. *See Portillo v. Cunningham*, 872 F.3d 728, 734 (5th Cir. 2017) ("Regardless of the district court's analysis, '[w]e may affirm for any reason supported by the record, even if not relied on by the district court.'"(quoting *Edge Petrol. Operating Co. v. GPR Holdings, L.L.C. (In re TXNB Internal Case)*, 483 F.3d 292, 299 n.9 (5th Cir. 2007))); *United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 330 (5th Cir. 2003) ("Although both sides heavily briefed [a particular] issue . . . , this Court need not address this issue in order to affirm.").

## III.

For the foregoing reasons, we AFFIRM the judgment of the district court.